709 A.2d 226

SOUTHPORT DEVELOPMENT GROUP, INC., A NEW JERSEY COR-
PORATION AND CLUB DEVELOPMENT GROUP, INC., A NEW
JERSEY CORPORATION, PLAINTIFFS–APPELLANTS, v. THE
TOWNSHIP OF WALL, TOWNSHIP COMMITTEE, AFFORDA-
BLE HOUSING TRUST FUND AND THE WALL TOWNSHIP
LAND USE OFFICER, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1997—Decided March 31, 1998.

Before Judges BROCHIN, WEFING and BRAITHWAITE.

*Douglas J. Gatta* argued the cause for appellants (*Abrams, Gatta, Falvo & Servin,* attorneys; *Mr. Gatta,* on the brief).

*Jeffrey R. Surenian* argued the cause for respondents (*Lomell, Muccifori, Adler, Ravaschiere, Amabile & Pehlivanian*, attorneys; *Mr. Surenian*, of counsel and on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

Plaintiffs [1] appeal from the trial court's grant of defendants' cross-motion for summary judgment. After carefully reviewing the entire record in this matter, we are satisfied that the judgment for defendants should be affirmed but for reasons other than those expressed in the trial court's opinion, *Southport Dev. Group, Inc. v. Township of Wall,* 295 *N.J.Super.* 421, 685 *A.*2d 84 (Law Div.1996).

We consider it necessary to set forth the factual background of this matter at some length so that the basis of our decision may be more easily understood. That factual background is, of necessity, somewhat detailed and is made more complicated by the fact that it requires consideration of the actions not only of these parties but of litigation between Wall Township (Wall) and other parties that was going on within basically the same time frame.

In July 1986, Wall passed Ordinance 18–1986 as part of its efforts to meet its *Mount Laurel* responsibilities to provide low and moderate income housing. *Southern Burlington County NAACP v. Township of Mount Laurel,* 67 *N.J.* 151, 336 *A.*2d 713, *appeal dismissed* and *cert. denied,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975) (*Mount Laurel I* ) (developing municipalities are constitutionally required to provide a realistic opportunity for the development of low and moderate income housing); *Southern*

---

[1] The named plaintiffs are the two corporations which obtained variances to develop two residential projects in Wall Township. Prior to completion of the projects, the two corporations came under the control of the same principal, William Govel. For purposes of this opinion, there is no need to distinguish between the actions of the two corporations or between the corporations and their principal. For ease of understanding we shall refer to "plaintiffs" throughout.

*Burlington County NAACP v. Township of Mount Laurel,* 92 *N.J.* 158, 456 *A.*2d 390 (1983) (*Mount Laurel II* ) (every municipality has an affirmative obligation to provide its fair share of affordable housing).

When Wall passed this ordinance, it had already been engaged in litigation for nearly two years with five separate builders who had sued the Township over its allegedly exclusionary zoning practices and who each sought a builder's remedy. These five lawsuits had been consolidated before Judge Serpentelli, one of the judges designated to handle *Mount Laurel* litigation. This consolidated matter is referred to by the parties as the *"Cove"* lawsuit, after the first named plaintiff. We shall adopt that same designation. These plaintiffs were never parties to the *Cove* litigation.

Ordinance 18–1986 required that applications for residential development with a density greater than three units per acre which had not received final approval prior to July 1, 1986 had to provide for low and moderate income housing to obtain approval. The ordinance also specified that a builder could meet that obligation by "payment to the township of a sum of money in lieu of actual construction of the required low and moderate income housing units in an amount to be determined by a formula established by the township committee."

In September 1986, plaintiffs obtained variances from Wall to build town houses on two separate tracts where such use was otherwise not permitted. While each of the variances required that twenty percent of the units to be constructed be dedicated to low and moderate income housing, they also provided, in nearly identical language, that "in the event that the Twp. of Wall adopts an ordinance which permits a monetary contribution in lieu of constructing *Mount Laurel* units, then the applicant will be permitted to either build the units or to make such cash contribution as required by the ordinance of Wall Twp."

Although neither the initial Ordinance 18–1986 nor the variances specified the amount of the contribution that would be called for in

lieu of constructing *Mount Laurel* units, plaintiffs understood, from conversations with members of the Board of Adjustment and its attorneys, that it would range between $10,000 and $15,000 for each *Mount Laurel* unit they did not construct. Wall made no commitment, however, that the development fee would not exceed a certain amount.

In the autumn of 1987, plaintiffs were in communication with the New Jersey Department of Community Affairs seeking the Department's approval of the Public Offering Statement they intended to utilize in conjunction with the sale of these units. *N.J.S.A.* 45:22A–21 to –42. The Department, as part of its review, raised the issue whether the offering should reveal that certain of the units were intended as low and moderate income housing. On October 20, 1987, both Wall's attorney and the plaintiffs' attorney wrote to the Department, with copies to each other, to the effect that it was anticipated that the projects would not include such units but that the plaintiffs would instead be making a contribution to Wall through the Township's Affordable Housing Trust Fund. The letter of Wall's attorney refers to a contribution of $10,000 to $15,000 per unit. The letter of plaintiffs' attorney refers to a contribution between $60,000 and $90,000, computed upon the six *Mount Laurel* units that would not be built. Wall's attorney made no response to that estimate.

In December 1987, Wall passed ordinance 34–1987 which established the Wall Affordable Housing Trust Fund. Under this ordinance, developments which had received a variance after July 1, 1986 that provided for the possibility of a cash contribution to satisfy a *Mount Laurel* obligation could meet that obligation by paying "into the Affordable Housing Trust Fund of the Township of Wall the sum of $10,000 for each· such unit constructed."

This ordinance, and its predecessor 18–1986, were part of a comprehensive effort by Wall to satisfy its *Mount Laurel* obligations through settlement of the *Cove* lawsuit, which had been proceeding in the normal course and which eventually resulted in a Judgment of Repose entered on September 24, 1990.

Plaintiffs' projects were substantially completed by early 1988, and on June 22, 1988, Wall's land use officer notified plaintiffs that the development fee was $10,000 for each unit constructed, not $10,000 for each *Mount Laurel* unit not built. He calculated the plaintiffs owed $320,000 for Southport and $160,000 for Club. Although some correspondence ensued between plaintiffs' counsel and Wall on the proper interpretation of the ordinance, Wall adhered to its view that the ordinance called for a payment of $10,000 per unit, not $10,000 per *Mount Laurel* unit not built.

Southport made its first payment in April 1989; through July 1992 it paid $290,000. These payments were not made entirely uneventfully, however.

By the late 1980's, the real estate market had taken a downturn and as a result plaintiffs were experiencing financial difficulty. The financial distress was such that eventually both developments went into foreclosure. Wall learned that plaintiffs were permitting purchasers to move into units without having obtained a certificate of occupancy from the township. Plaintiffs were unable to obtain such certificates of occupancy without payment in full of the development fee. Numerous municipal court summonses were issued and plaintiffs eventually pleaded guilty to two of the charges; the balance were dismissed in return for a promise to make future payments promptly. When plaintiffs again did not comply, further litigation was threatened.

On December 13, 1990, the Supreme Court decided *Holmdel Builders Ass'n v. Township of Holmdel,* 121 *N.J.* 550, 583 *A.*2d 277 (1990) in which it concluded that a municipality could, under the Fair Housing Act, *N.J.S.A.* 52:27D–301 to –329, enact mandatory development fee ordinances but that such ordinances were subject to regulation by the Council on Affordable Housing (COAH). The Court set aside the ordinances before it because the ordinances had been adopted without such regulatory oversight. *Id.* at 580, 583 *A.*2d 277.

In April 1991, four months after *Holmdel* was decided, five years after Wall first provided for development fees and three

years after Wall's final development fee ordinance was adopted and plaintiffs were advised of the proper computation of Wall's development fee, plaintiffs began this action. Their two-count complaint, which they captioned as a complaint in lieu of prerogative writ, sought to restrain Wall from collecting any further development fees under its ordinance and sought a refund of the fees paid, an amount which totalled more than $400,000.

Defendants moved for summary judgment, which was initially denied in September 1992. Among the arguments defendants unsuccessfully presented at that motion was the assertion that plaintiffs' complaint was untimely under *R.* 4:69. The judge who heard the motion concluded plaintiffs were not barred because they were not challenging the ordinance on procedural grounds and because the matter was one of public interest.

We note at this juncture that we disagree with both these conclusions. *R.* 4:69–6(a) makes no distinction between procedural and substantive challenges and neither have the courts. *See Neelthak Dev. Corp. v. Township of Gloucester,* 272 *N.J.Super.* 319, 324, 639 *A.*2d 1141 (App.Div.1994). We shall turn to the question of the public interest later in this opinion.

The matter was again presented to the court on cross-motions for summary judgment in June 1995. By that time, the matter had been reassigned to a different judge, who concluded, after extensive oral argument, that testimony was required before the motions could be decided. After five days of hearings, the court concluded that defendants should be granted summary judgment.

This second court viewed this action as an attempt to seek relief from the Judgment of Repose which was entered in September 1990 to conclude the *Cove* matter for that Judgment by implication approved the development fee ordinance adopted by Wall under which plaintiffs had made their payments. The court went on to conclude that as plaintiffs had not clearly established a claim to relief under *R.* 4:50, defendants were entitled to summary judgment. We have concluded that it is unnecessary to analyze this matter in terms of *R.* 4:50 for we are satisfied that the first court

which heard this matter erred when it determined that plaintiffs were entitled to seek relief despite their failure to comply with *R.* 4:69–6(a).

Because we approach this matter in terms of *R.* 4:69–6(a), rather than *R.* 4:50, we have no occasion to determine whether these plaintiffs, who were not parties to the *Cove* litigation, were even entitled to seek relief under *R.* 4:50. *Compare Shammas v. Shammas,* 9 *N.J.* 321, 330–31, 88 *A.*2d 204 (1952) (only a party or its legal representative is entitled to seek relief from a judgment) *with Morris County Fair Housing Council v. Boonton Township,* 197 *N.J.Super.* 359, 364–365, 484 *A.*2d 1302 (Law Div.1984), *aff'd.,* 209 *N.J.Super.* 108, 506 *A.*2d 1284 (App.Div.1986) (*Mount Laurel* litigation may be considered representative litigation and judgments entered concluding such litigation are binding upon non-parties) *and with East/West Venture v. Borough of Fort Lee,* 286 *N.J.Super.* 311, 669 *A.*2d 260 (App.Div.1996) (approval of settlement of *Mount Laurel* litigation after judicial hearing does not preclude a later challenge to subsequently adopted implementing ordinances). Nor need we determine whether plaintiffs, even if they had standing under *R.* 4:50, could establish entitlement to relief. *Compare Hartford Ins. Co. v. Allstate Ins. Co.,* 68 *N.J.* 430, 433–35, 347 *A.*2d 353 (1975) (a change in law does not justify relief under *R.* 4:50) *with Lee v. W.S. Steel Warehousing,* 205 *N.J.Super.* 153, 500 *A.*2d 394 (App.Div.1985) (Division of Workers' Compensation had authority to order the recalculation of previously entered judgments after Supreme Court clarified proper method of calculation).

*Rule* 4:69–6(a) provides that "[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to ... review...." Plaintiffs failure to comply with *R.* 4:69–6(a) bars this present action. We reach this conclusion in light of the potential wide-spread impact of untimely challenges to municipal actions taken to achieve *Mount Laurel* compliance. It is essential to sound municipal planning and budget development

that challenges to ordinances implementing *Mount Laurel* responsibilities be brought on a timely basis.

Wall's development fee ordinance was one aspect of a broad effort by the municipality to satisfy its *Mount Laurel* obligations. One of the techniques which Wall adopted to settle the *Cove* litigation, which was approved in the Judgment of Repose, was to execute regional contribution agreements with neighboring municipalities. The township looked to the anticipated revenue from its fee development ordinance to provide the funding for these regional contribution agreements. Even though Wall was obligated under the Judgment of Repose to use its bonding capacity to close any shortfall if the fee development ordinance did not generate sufficient funds, it clearly intended to look to the fee development ordinance in the first instance.

The technique of regional contribution agreements and the fee development ordinance which was the basic funding source for such agreements were both central to Wall's fair share plan which was approved by the Judgment of Repose. Allowing an untimely challenge to this fee development ordinance poses an unfair risk of turmoil and instability for Wall, which had every right to expect that it would receive the full measure of the six-year period of respite provided by entry of the Judgment of Repose on September 24, 1990.

We recognize that *R.* 4:69–6(c) allows a court to enlarge the forty-five day time limit "where it is manifest that the interest of justice so requires." A determination of whether the interest of justice requires a relaxation of the time limit involves, in any case, a consideration of the potential impact upon the municipality if the matter proceeds as well as a consideration of the impact upon the plaintiff if the claim to relief is barred. It is also appropriate to look to the previous actions or inactions of the plaintiff; if it sat idly by in the past, its entitlement to enlargement of the time limit is weakened. *See County of Ocean v. Zekaria Realty Inc.,* 271 *N.J.Super.* 280, 288, 638 *A.*2d 859 (App.Div.), *cert. denied,* 513 *U.S.* 1000, 115 *S.Ct.* 510, 130 *L.Ed.*2d 417 (1994).

■ We are satisfied that under either consideration, there is no basis to enlarge the deadline to the extent that would be required here. Plaintiffs were aware as early as 1988 of Wall's interpretation of this ordinance and yet they did nothing. If they had acted promptly and with reasonable diligence to present their challenge, the matter could have been heard and resolved well before the Judgment of Repose was entered in 1990. Plaintiffs' right to challenge this ordinance accrued long before the Supreme Court decided *Holmdel, supra,* and was barred long before this complaint was filed.

■ Among the issues plaintiffs raise on appeal, there is one which we must address separately; all others are disposed of by our conclusion that the matter is time-barred. Plaintiffs contend that Wall's administration of the fee development ordinance was arbitrary and unequal in that all developers were not ultimately required to pay a development fee of $10,000 per unit. Because the record does not completely disclose when plaintiffs became aware of this disparity, it is not possible to determine whether this claim should be similarly time-barred.

We are satisfied, however, that a consideration of the merits of the argument is of no assistance to plaintiffs. Plaintiffs had the burden to establish that any disparity in the development fees ultimately charged by Wall was without rational justification.[2] *Doe v. Poritz,* 142 *N.J.* 1, 92, 662 *A.*2d 367 (1995) ("A classification that does not impact a suspect class or impinge upon a fundamental constitutional right will be upheld if it is rationally related to a legitimate government interest.")

Here, the few times there was a departure from the ordinance's literal terms, there was a concomitant application to the court for

---

[2] We are, of course, aware that the matter was procedurally before the trial court on cross-motions for summary judgment. The trial court specifically noted, however, that it had converted the matter into a summary action under *R.* 4:67–1(b) to resolve any genuine issues of fact. *Southport Dev. Group, Inc. v. Township of Wall,* 295 *N.J.Super.* 421, 444 n. 18, 685 *A.*2d 84 (Law Div.1996).

approval under the Judgment of Repose and an appropriate amended Judgment was entered. The departures were justified by legitimate concerns that Wall would not be able to meet its *Mount Laurel* housing obligations if relief were not granted. The record shows, moreover, that a majority of the developers did, in fact, pay the full fee of $10,000 per unit. The trial court was clearly correct in concluding that plaintiffs had not satisfied the burden that rested upon them to establish their claim of arbitrary and discriminatory treatment.

Affirmed.