739 A.2d 956

NEW JERSEY SHORE BUILDERS ASSOCIATION; CENTRAL JERSEY BUILDERS ASSOCIATION; AND NEW JERSEY BUILDERS ASSOCIATION, ALL NOT-FOR-PROFIT CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS–RESPONDENTS, v. TOWNSHIP OF SOUTH BRUNSWICK IN THE COUNTY OF MIDDLESEX, A MUNICIPALITY OF NEW JERSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 13, 1999—Decided October 8, 1999.

Before Judges PETRELLA, CONLEY and BRAITHWAITE.

*Donald J. Sears* argued the cause for appellant (*Busch and Busch*, attorneys; *Mr. Sears*, on the brief).

*Paul H. Schneider* argued the cause for respondents (*Giordano, Halleran & Ciesla,* attorneys; *Mr. Schneider,* of counsel and on the brief; *Nicole Devaney,* also on the brief).

*Thomas W. Dunn,* argued the cause for *amicus curiae* New Jersey State League of Municipalities (*William John Kearns, Jr.,* General Counsel, attorney; *Mr. Dunn* and *Jennifer M. Bretz* of *Beattie Padovano,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

This appeal by three associations of developers challenges an ordinance of the Township of South Brunswick (Township) which deals with maintenance of water detention basins. Essentially, the Township's ordinance provides for the continued "repairs and major maintenance" of detention basins and provides for responsibility to be assumed by either the Township or the private owner.

In June 1996, approximately eight years after its adoption in 1988, the ordinance was challenged in an action in lieu of prerogative writs by plaintiffs, three New Jersey associations: New Jersey Builders Association, Central Jersey Builders Association and New Jersey Shore Builders Association (collectively "the associations").[1] The associations are represented to be not-for-profit corporations comprised of residential home builders, contractors and suppliers doing business in New Jersey. None of the associations are parties to any agreement with the Township. However, certain of their members are represented to have been affected by the ordinance.

The associations contend that the municipal regulations exceed the Township's authority under the Municipal Land Use Law (MLUL) and allow an unlawful exaction which bears no reasonable

---

[1] The pleadings contain no recital of subrogation rights from any of their constituent members.

relationship to any lawful purpose or objective under the MLUL. The associations also assert that the regulations allow an unconstitutional taking of property and represent an *ultra vires* attempt by the Township to impose its governmental duties upon private parties. The associations requested release and return of all "escrow" deposits,[2] including interest collected by the Township under the regulations, to the builders and developers who made such deposits over the last eight years, even though none of them are parties to this lawsuit.

Thereafter, the parties cross-moved for summary judgment. When the motions were listed on January 23, 1998, before the judge assigned to the matter, he indicated that he had a potential conflict due to his representation of one of the builders in the plaintiff associations before becoming a judge. As a result, he transferred the issue raised by the Township relating to the standing of plaintiffs to challenge the ordinance to another judge.

The second judge decided the motions regarding plaintiffs' standing on the papers and ruled that the associations had standing, although the record before us contains no findings on this issue. The original judge then took the case back, heard arguments on the cross-motions for summary judgment, and granted the associations' motion while denying that of the Township. The judge declared the Township ordinance invalid and unenforceable in its entirety and ordered the Township to return "escrow"

---

[2] We inquired as to the existence of escrow agreements and the documents furnished us were copies of a sample agreement indicating that the developer had agreed to relevant conditions where the developer undertook the maintenance obligations. We also received a sample resolution by the Township reciting acceptance of the conditions by the developer. This form of resolution was used when the Township took over responsibility for a developer-built detention basin on private property. The documents furnished to us have no fixed term and do not provide for the disposition of escrow funds at the expiration of any term or happening of any condition. The payment seems more to a dedicated fund, and perhaps perpetual fund. Thus, the term "escrow" agreement is somewhat of a euphemism here and seems inappropriate. The traditional concept of an escrow is not followed, and hence, we use quotation marks around the term when referring to such agreements under the ordinance.

deposits and accrued interest within thirty days of the order to the entities that had paid the funds.

Although the associations' challenge raised several independent issues in attacking the subject ordinance, the judge questioned the validity of the ordinance on grounds of unequal taxation, and as an *ultra vires* aspect of the municipality's taxation power. The judge raised the unequal taxation issue because he felt that the residents of the Township would be paying for services that they were not getting. The judge stated:

> I am not resolving the case because of any sympathy I feel for the builders. The question is impacting the homeowners. Ultimately, there is an effort to subject them to a tax for services that they're not getting. And that, I think, that's where it primarily runs afoul.

* * * *

> I also think there is a Constitutional infirmity, that I don't have to address. *Ultra vires,* the Municipal Land Use, Section 53. I think it is inconsistent with the intent and the purpose of the Legislature that appears to deal with the legal services, legal taxing.

> Although I don't criticize the municipality's attempt to lower its operating budget. I don't think you can do it in this fashion, without regard to an overall plan to deal with these issues, on a municipal-wide basis, not a development by development, homeowner by homeowner basis.

> I think once you have a development, that takes drainage run-off from public entities, such as the streets or parks, or anything else, you're asking the homeowners to build up-front. But, ultimately, the homeowners to subsidize that which other areas of the town don't have to do.

> I don't think that's legal under our current set of legislation. So, I will declare this ordinance to be unlawful on its face, on the basis of the motion for summary judgment, without the need for a plenary hearing.

We granted the Township's request for stay of the Law Division's order pending determination of this appeal.

On July 5, 1988, the Township of South Brunswick amended Chapter 175 of its Township Code to add Detention Basin Maintenance Regulations (§ 26–88). Section 175–186.2 provides in relevant part:

> C. Maintenance.

(1) At the time of approval of the plan, responsibility for continued maintenance of surface water runoff control structures and measures shall be stipulated and recorded in the resolution of approval.

(2) Where continued maintenance is to be the responsibility of the applicant, a proposed maintenance agreement, a form to be provided by the township, shall be submitted. The agreement shall specify maintenance responsibility and standards during and after completion of the proposed activity and, upon approval, shall be recorded by the applicant in the office of the Middlesex County Clerk. The applicant shall thereafter file a copy of the recorded agreement with the township Planning Department. The township shall retain the right to enter and make repairs and improvements where necessary to ensure that all control measures as well as areas dedicated to surface water retention or groundwater recharge are adequately maintained and preserved. The township may charge the owner for the costs of these services if such maintenance is his responsibility.

(3) Where continued maintenance of a detention basin is to be the responsibility of the township, the following provisions shall apply:

(a) The applicant shall maintain the basin during the construction phase of the project.

(b) As a condition of final approval and prior to acceptance of the basin by the township, the applicant shall enter into an escrow agreement with the township, which agreement shall include a statement that the escrow contribution is made in consideration of the township assuming all future maintenance of the basin. The form of agreement shall be provided by the township. The agreement, upon execution, shall be recorded by the applicant in the Office of the Middlesex County Clerk. The applicant shall thereafter file a copy of the recorded agreement with the township Planning Department.

(c) The amount of the escrow contribution shall be based upon area of the detention basin on an acreage basis, which shall include the plan area at the top of the bank plus an additional twenty five (25) feet at the top of the bank encircling the basin. The amount of the escrow contribution shall be calculated according to the following formula:

Nine thousand dollars ($9,000) per acre of area of basin, plus twenty-five thousand dollars ($25,000)per basin for repairs and major maintenance.

The total of the above shall be multiplied by a factor of one and one-tenth (1.1) to cover the cost of the first year of maintenance.

The minimum contribution, regardless of the size of the basin, shall be thirty-five thousand dollars ($35,000).

(d) Upon certification by the Township Engineer that the project is complete and the guarantee bond for the project may be released, acceptance of the basin by the township shall be specifically stated in the resolution authorizing the bond release. The township shall retain from the cash portion of the bond a sum equal to the escrow contribution calculated by the Township Engineer in accordance with the formula in Subsection C(3)(c) above. In the event that the cash portion of the bond is less than the escrow contribution, the developer shall post the deficit in cash prior to release of the bond. Any interim bond reductions authorized by the

township shall not be construed to mean that all or any part of the detention basin has been accepted by the township, nor shall any such interim reduction reduce the cash portion of the bond to an amount less than the escrow contribution.

(e) The escrow contribution does not include maintenance of the lot or open space area in which the detention basin is located.

According to the Township, before enactment of its detention basin ordinance it relied upon individual owners of basins to maintain them. However, the Township asserted that private owners failed to maintain the basins adequately, and, as a result, the basins became potential serious health hazards to its residents. Thus, a stated purpose of the ordinance was to lessen such hazard.

The ordinance sets out two alternatives for maintenance of the structures. The first contemplates that maintenance will be the responsibility of the applicant who enters into an agreement with the Township governing maintenance responsibilities and standards. If the developer chooses to maintain the detention basin, no "escrow" agreement is required and no "escrow" contribution is paid by the developer. A second alternative offered to developers is to have the Township assume responsibility for the maintenance of the detention basin. If the developer wants to avoid maintenance responsibilities for either itself or a homeowner's association, it can request that the Township assume maintenance of the constructed detention basin. In exchange for the Township's assumption of maintenance responsibility it requires a minimum "escrow" contribution of approximately $35,000, which can vary based on a formula.

At the time of this litigation, the Township had accumulated approximately $500,000 in "escrow" funds which had been paid by various developers since 1988. No form of agreement or resolution relating to any "escrow" was presented to the motion judge and none is in the record of this appeal. According to the Township Administrator's certification, this principal generates an average of $26,000 in interest per year to pay for detention basin maintenance items such as grass trimming, weed control, pest control, and other routine maintenance. According to the Township, at the time of this litigation, approximately thirty detention

basins were maintained by the Township's Public Works Department.

The Township argues that not only do the plaintiffs lack standing, but, also, their complaint was filed out of time. *See R.* 4:69-6. Alternatively, the Township argues that the ordinance is constitutional because there is no taking. It contends the "escrow" amount is neither arbitrary nor prohibited by *N.J.S.A.* 40:55D-53. In support of its position, the Township points to health and safety concerns as well as the need for storm water management and control. It also asserts that title to any distribution basin does not automatically devolve to the Township. The Township also points to subsequent statutory enactments and regulations as validating its ordinance and opposes the return of all "escrow" funds.

The foregoing discussion makes clear that we are confronted in this appeal with many procedural irregularities which require us to reverse and remand. In the first place, we do not perceive how a judge who, because of disqualification due to a conflict of interest, sends a case to a different judge on the issue of standing, may then subsequently hear other or substantive issues in the same case. Although the appellant has not raised the issue, we *sua sponte* decide that such a disqualification requires that the judge step aside from all issues in the case. This alone requires reversal and remand.

Other matters will require reconsideration on remand and for the guidance of the judge on remand we briefly address some of the issues. While New Jersey courts have generally taken an expansive approach on standing issues, *see Crescent Pk. Tenants Ass'n v. Realty Equities Corp.,* 58 *N.J.* 98, 101, 275 *A.2d* 433 (1971); *Dome Realty, Inc. v. City of Paterson,* 150 *N.J.Super.* 448, 452, 375 *A.2d* 1240 (App.Div.1977), our review of the inadequate record here makes it clear that a remand is also required for specific findings and conclusions on the standing issue. It is not at all clear that the associations have demonstrated adverse effects to themselves or their members since the ordinance's enactment, particularly as to past developments containing detention basins. Nor is it clear that there is "substantial harm" or impediment to

developers pursuing new developments in the Township. In fact, the associations' attorney informed the motion judge that several of the law firm's current clients have developed properties in the Township and are currently subject to the challenged ordinance. Although this alone, without more, may not be dispositive, it does not appear that the subject ordinance has impeded development in the Township.

In addition, on the meager record presented on this appeal, it is unclear exactly what the "escrow" agreement is and whether the former developers or even future developers are required to or have entered into any contractual undertaking. As noted in footnote 1, *supra*, because of the inadequate record we requested and received copies of resolutions which approved individual "escrow" conditions and a form of agreement for developers who undertake to maintain the detention basins themselves. Such documents, particularly those bearing on the Township's undertaking to maintain the detention basins, were not before the trial judge and should be taken into account in considering the validity of the arrangements in those situations where the developer abdicates responsibility for maintenance of private detention basins to the municipality. On remand, the Law Division should determine in the first instance whether such arrangements are appropriate under state law and the ordinance, as well as under general contract principles. In addition, the judge should consider whether there was a waiver of a challenge to the past arrangements by developers who accepted the benefits of the approval of their projects and waited many years to assert an indirect challenge through an association, and whether the associations are or should be barred to that extent.

Consideration of the documents and the previous actions or inactions of the individual entities who make up the associations appears necessary when considering whether the associations could challenge past "escrow" agreements and may well impact on the ultimate determination of this matter.[3] *See Southport Devel-*

---

[3] If the associations or any of their individual members failed to act promptly and with reasonable diligence to present their challenge, their claims may be

*opment Group, Inc. v. Township of Wall,* 310 *N.J.Super.* 548, 556, 709 *A.*2d 226 (App.Div.), *certif. denied,* 156 *N.J.* 384, 718 *A.*2d 1213 (1998).

The associations have not alleged that they are subrogees of any of the individual members, but they nonetheless are asserting that the money should be repaid to those entities that paid it. In this regard, they would have to stand in the shoes of those developers who entered into "escrow" arrangements with the municipality in the past.

Recognizing some of the difficulties, respondents' attorney argued on appeal that, in any event, this matter should be considered as to prospective developers. Aside from the fact that advisory opinions are usually inappropriate, we are unprepared to say on this record that the ordinance cannot survive analysis under *N.J.S.A.* 40:55D–53, or that a municipality cannot contract with respect to maintenance of detention basins.

We also leave for the remand judge the issue of whether the complaint was filed in violation of *R.* 4:69–6(a) which provides that "[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed...." [4]

In dismissing the Township's argument that the associations were time-barred under *R.* 4:69–6, the judge merely stated:

---

time-barred. *See County of Ocean v. Zekaria Realty Inc.,* 271 *N.J.Super.* 280, 288, 638 *A.*2d 859 (App.Div.), *cert. denied,* 513 *U.S.* 1000, 115 *S.Ct.* 510, 130 *L.Ed.*2d 417 (1994); *Southport Development Group, Inc. v. Township of Wall, supra* (310 *N.J.Super.* at 556, 709 *A.*2d 226).

[4] *R.* 4:69–6(c) authorizes the court to enlarge this period of time "where it is manifest that the interest of justice so requires." The exception is typically applied to "cases involving (1) important and novel constitutional questions; (2) informal or *ex parte* determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." *Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 586, 350 *A.*2d 19 (1975). *See also Reilly v. Brice,* 109 *N.J.* 555, 558, 538 *A.*2d 362 (1988).

Frankly, I didn't pay any attention to it. But it's an issue of some consequence. And novel constitutional issues ordinarily warrant or justify a court exercising its discretion to allow the ordinance to be challenged out of time. But even though, typically, the ordinances—the challenges of the ordinance are not, in particular, are not timely, unless they affect somebody. The first time somebody asks for somebody to pay money, that individual could file suit. The next year, someone filed suit against the same ordinance. Although I understand your position, I won't reserve it on that basis.

■ Although the judge said there were "novel" constitutional issues involved, that does not relieve the court of its duty to make findings and not to render advisory opinions if a standing issue is suspect. *Crescent Pk. Tenants Ass'n v. Realty Eq. Corp., supra* (58 *N.J.* at 107, 275 *A.*2d 433). The motion judge's conclusory opinions seem unsupported by the record. Moreover, constitutional issues may require a plenary hearing in prerogative writs cases. *See Odabash v. Mayor and Council of Borough of Dumont,* 65 *N.J.* 115, 121 n. 4, 319 *A.*2d 712 (1974); *Rt. 15 Associates v. Jefferson Tp.,* 187 *N.J.Super.* 481, 489, 455 *A.*2d 518 (App.Div. 1982).

■ In any event, the decision on the substantive issue was inadequate for our review and must be addressed on remand. Because we reverse essentially on procedural grounds, we do not further address other arguments raised, some of which were not ruled on by the motion judge. *See Englander v. West Orange Tp.,* 224 *N.J.Super.* 182, 191, 539 *A.*2d 1271 (App.Div.1988). However, we also note in passing that the reasoning of the motion judge in declaring the ordinance invalid, *i.e.,* because residents of the Township were paying for services that they were not getting, appears factually unsupported in the record. There is no record support for the judge's statement that homeowners were impacted in any way by the subject ordinance or that developments in the Township "take drainage run-off from public entities, such as the streets or parks." Indeed, "[t]he validity of regulations, like the validity of statutes, must be determined in a present context and not some prospective context." *League of Municipalities v. Community Affairs,* 310 *N.J.Super.* 224, 241, 708 *A.*2d 708 (App.Div. 1998), *aff'd,* 158 *N.J.* 211, 729 *A.*2d 21 (1999).

Accordingly, we reverse the order granting summary judgment in favor of the associations and remand for further proceedings consistent with our decision.