**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3515-17T2

TEAM RHODI, LLC,

     Plaintiff-Appellant,

v.

JERSEY CITY REDEVELOPMENT
AUTHORITY[1], CITY OF JERSEY
CITY, and FDAD MAPLE, LLC,

     Defendants-Respondents.

_____

Argued telephonically October 10, 2019 –
Decided July 29, 2020

Before Judges Nugent, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2159-17.

Andy S. Norin argued the cause for appellant (Faegre Drinker Biddle & Reath, LLP, attorneys; Andy S. Norin,

---

[1] The Law Division Complaint, the order appealed from, and some of the briefs refer to this defendant as Jersey City Redevelopment Authority. This defendant refers to itself as Jersey City Redevelopment Agency, which is consistent with its resolutions of record.

of counsel and on the brief; Angela R. Raleigh, on the brief).

Charles J. Dennen argued the cause for respondent Jersey City Redevelopment Authority (Archer & Greiner, PC, attorneys; James M. Graziano, Charles J. Dennen and Francis T. Jamison, on the brief).

John J. Curley argued the cause for respondent FDAD Maple, LLC (John J. Curley, LLC, attorneys; John J. Curley and Jennifer J. Bogdanski, on the brief).

Philip S. Adelman, Assistant Corporation Counsel, argued the cause for respondent City of Jersey City (Peter J. Baker, Corporation Counsel, attorney, joins in the brief of respondent Jersey City Redevelopment Authority).

PER CURIAM

This appeal involves the Local Redevelopment and Housing Law ("Redevelopment Law"), N.J.S.A. 40A:12A-1 to -89. More than fifteen years after the Municipal Council of defendant City of Jersey City ("Council") declared an area within the City in need of redevelopment, plaintiff, Team Rhodi, LLC, purchased seven lots within the redevelopment area. More than seventeen years after Council declared the area in need of redevelopment, Team Rhodi filed a prerogative writs action challenging Council's declaration, as well as defendant Jersey City Redevelopment Authority's designation of a redeveloper and the use of eminent domain to acquire Team Rhodi's property. The trial court dismissed the prerogative

writs action, concluding, among other things, it was untimely. Team Rhodi appeals. We affirm.

I.

A.

The events underlying this appeal began in 1998 when Council adopted a resolution and authorized an investigation of the Garfield Brownfield Study Area ("study area") to determine whether it qualified as an area in need of redevelopment under the Redevelopment Law. The parties do not dispute that although the original study area did not include the subject lots, the seven lots now owned by Team Rhodi are included within the final area eventually determined to be in need of redevelopment.

Upon completion of the investigation, the Jersey City Planning Board ("Board") held a hearing to consider whether the study area qualified as an area in need of redevelopment. The Board published notice of the meeting on October 3 and 10, 1998. The notice read:

> Please be advised at their October 20, 1998 meeting, [the Board] will consider a Study Report to determine whether the area designated as the [study area] qualifies as an "area in need of redevelopment." Formal action will be taken. . . . This meeting is an open public meeting and those persons for or against such determination will be given an opportunity to address the board. . . .

Team Rhodi points out the absence of notice to the public that if the study area qualified as an area in need of redevelopment then the City could acquire property within the area through the exercise of the power of eminent domain.

During the hearing, the City's Director of Planning entered into evidence proof of a letter about the meeting that had been sent to each property owner in the study area. As noted previously, Team Rhodi had not purchased its seven lots and would not do so for more than a decade. The Planning Director proceeded to give a presentation, which included 215 slides and the introduction of a comprehensive report entitled "Report Concerning the Determination of the Proposed Garfield Brownfield Study Area" ("Study Report").

The Board analyzed each block within the study area. Block 2073—now Block 19003 in which Team Rhodi's seven lots are located—was described as follows:

> This block's southern edge is across Maple Street from Block 2070. Its Maple Street frontage together with five lots depth from each Maple Street corner, also extends back to form a vacant rectangular plot, opposite the one in 2070. The Monitor Street corner is ARH ASSOC owned and blacktopped over with several trucks parked. The remainder of the Monitor Street lots consist of older two and three family homes and garages. Along Johnston Avenue is a row of three-story brick and frame multiple dwellings which are mostly in fair condition. This is similar to the row of buildings on Pine Street, only one of which is in poor condition.

4

The Study Report concluded the entire study area as a whole satisfied the criteria under the Redevelopment Law for designation as an area in need of redevelopment. When asked how the redevelopment designation would impact private owners of the properties within the study area, the Planning Director responded, "anyone who owns private property in the study area is free to buy it and sell it and redevelop it today, tomorrow and the next day." However, he also explained that a blight designation triggered the City's authority to acquire the property through condemnation, a determination to be made during the redevelopment plan drafting phase.[2]

The Board voted to recommend the area in need of redevelopment designation for the entire study area, and two months later, in December 1998, Council adopted a resolution to that effect. According to Team Rhodi's appellate brief, the City provided neither public nor private notice of its determination that the Study Area was an area in need of redevelopment.

In 1999, the City adopted the Morris Canal Redevelopment plan ("MCR plan") as the redevelopment plan for the study area. The MCR plan has been amended more than twenty-nine times between 2002 and 2016.

---

[2] The parties use the terms "blight" and "area in need of redevelopment" interchangeably.

A-3515-17T2

In 2004, the Jersey City Redevelopment Authority ("Authority") designated LMD #13 Urban Renewal, LLC ("LMD") as the redeveloper. Their 2006 agreement obligated LMD to begin redevelopment of certain lots in Block 2073 and begin construction by April 1, 2008. LMD took no action for nearly ten years.

In 2015, Team Rhodi began its acquisition of Lots 1 through 7 in what was formerly Block 2073, now 19003 ("Rhodi Property"). In May 2015, a company named MC Maple, LLC, ("MC Maple") filed an application with the Authority for a redeveloper designation with respect to lots 13, 14, 15, and 16 in Block 19003 ("MC Maple Property"). That October, the Authority approved the transfer of LMD's redevelopment rights in the MC Maple Property to MC Maple.

The next day, entities that Team Rhodi characterizes as "affiliates" of MC Maple and defendant FDAD Maple, LLC ("FDAD Maple"), reportedly contributed $100,000, and months later an additional $50,000, to the Coalition for Progress, a Super Pac that supported Jersey City Mayor Steven Fulop's campaign for governor. The Jersey City Redevelopment Pay-to-Play Ordinance, §3-51.2, prohibits an entity from making certain political contributions, including to candidates for elective office in Jersey City, any Jersey City or Hudson County political committees, or other PAC's, three months prior to applying to enter into a redevelopment agreement. In the redeveloper application, MC Maple certified its compliance with the pay-to-

play ordinance. There is no evidence that either MC Maple or FDAD Maple made any improper political contributions.

Meanwhile, from 2015 to 2017, Team Rhodi completed its acquisition of Lots 1-7, Block 19003. After the acquisition, Team Rhodi commenced environmental remediation of the property, demolished several buildings, hired personnel, and asserted it was "ready, willing and able to develop the Property in accordance with the Redevelopment Plan." Notwithstanding its asserted readiness, however, Team Rhodi never submitted an application to the Authority to be designated as the redeveloper of the Rhodi Property within the MCR plan.[3]

FDAD Maple eventually submitted an application for redeveloper designation with respect to the remaining lots in Block 19003, lots 1-12 and 17-19. In November 2016, the Authority approved the transfer of LMD's redevelopment rights respecting these lots to FDAD Maple. FDAD Maple wrote a February 2017 letter to Team Rhodi's managing member. The letter stated:

> Thank you for meeting with Rob and me on Tuesday. I am writing this letter to follow up and memorialize our discussion, specifically to offer in writing the two proposals we made that we feel will resolve our situation fairly.

---

[3] Plaintiff asserts it could not submit a redeveloper application for its properties because the Authority did not make the applications public, and such applications were only available by invitation or informal discussion. Plaintiff has failed to provide evidence of those allegations in the record.

A-3515-17T2

As you know, our company, . . . has been designated as the redeveloper of Block 19003, including Lots 1 thru 7 (the Johnston Street properties), within the Morris Canal Redevelopment Plan Area. In that regard, we have an obligation to attempt to acquire parcels within Tax Block 19003.

We understand that your company . . . owns or is contracted to purchase Lots 1 thru 7 (the Johnston Street properties).

Since we both have pursued the possible development of these parcels for a significant time and at significant costs, we trust you agree that a fair resolution is for both of our companies to participate equally in the development of these parcels.

The letter also presented two options for purchasing the Rhodi Property, either through joint venture or division of the properties. It is unclear from the record if or how Team Rhodi responded. In April 2017, the Authority and FDAD Maple entered into a redevelopment agreement for the remaining lots in Block 19003. That June, the Authority ratified the agreement by resolution.

B.

In May 2017, Team Rhodi filed a complaint in lieu of prerogative writs. The eight-count complaint alleged, among other claims: (i) the City lacked the authority to condemn the Rhodi property; (ii) the designation of FDAD Maple, as "redeveloper" of Team Rhodi's property and the decision to use eminent domain to acquire the property was arbitrary, capricious and unreasonable; (iii) condemnation

of the property would violate the United States Constitution and the New Jersey Constitution; and (iv) the redevelopment agreement between the Authority and FDAD Maple was ultra vires and arbitrary, capricious and unreasonable. The trial court disagreed with these arguments and dismissed Team Rhodi's complaint.

The trial court determined that Team Rhodi's challenge to the City's "blight designation" was untimely and had not been asserted as a defense in a condemnation action. The court also determined the Board had provided adequate notice to the public in general, and to property owners specifically, of its intention to consider a study and determine whether the area designated in the study was in need of redevelopment. The court further determined there was ample evidence before the Board to support its determination the study area was in need of redevelopment. Concerning the City's authority to condemn property within the study area, the court found the City's authority was not affected by the absence of notice because the City and the Board had provided adequate notice as required by statute and to satisfy due process.

The court next determined that selection of a redeveloper rests within the sound discretion of the municipality. The court determined the City had not abused its discretion and more specifically, the record was devoid of evidence to the

contrary. The court determined the Authority's decision to designate FDAD Maple as a redeveloper was not made in bad faith, arbitrary or capricious.

Last, the trial court determined that even if those entities that contributed to the Super Pac were affiliates of FDAD Maple, the contributions to the Super Pac did not violate the City's pay-to-play ordinance.

## II.

On appeal, Team Rhodi first challenges the City's blight designation of the entire study area. Arguing that it may challenge the City's action nearly two decades later, notwithstanding a forty-five-day statutory limitation to such challenges, Team Rhodi contends the City and Board failed to provide adequate notice to property owners. Team Rhodi also argues the blight designation of the Rhodi property was not supported by substantial evidence.

Team Rhodi next advances several challenges to the actions taken by the Authority. First, it contends the Authority's exercise of eminent domain to acquire the Rhodi property is unauthorized by the Redevelopment Law. Next, it asserts the Authority's designation of FDAD Maple as the redeveloper was arbitrary, capricious, and unreasonable because the Authority is using eminent domain to transfer property from one developer to another outside of the context of a unitary development of a broader development project, and because the Authority selected

A-3515-17T2

FDAD Maple as the redeveloper for political reasons. Last, Team Rhodi contends the Authority's use of eminent domain to condemn and acquire the Team Rhodi property violates the takings clause of the Fifth Amendment.

In its final argument on this appeal, Team Rhodi contends it was entitled to discovery as to all issues, an entitlement it asserts the trial court erroneously denied.

The Authority responds that Team Rhodi's challenge to the blight designation of the study area is untimely, and Team Rhodi has cited no controlling precedent to the contrary. The Authority adds the City and Board provided sufficient notice of the intention to determine whether the blight designation was appropriate, and the determination itself was supported by substantial evidence.

Next, the Authority submits Team Rhodi's challenge to the Authority's use of eminent domain is meritless and based on Team Rhodi's misconstruction of otherwise applicable legal precedent. In addition, the Authority insists its decision to designate FDAD Maple as the redeveloper was not arbitrary, capricious or unreasonable. To the contrary, it was made in furtherance of the public good. Consequently, the Authority concludes, the trial court correctly determined the City and the Authority satisfied the public use requirement necessary for its action.

Last, the Authority asserts the trial court did not abuse its discretion by denying Team Rhodi discovery.

A-3515-17T2

FDAD Maple agrees with the Authority that Team Rhodi's appeal lacks merit. FDAD Maple argues the record demonstrates Team Rhodi's challenge to the blight designation is untimely, and in any event, proper notice was given of the Board's intent to determine the blight issue. FDAD Maple adds that it is qualified to be a redeveloper for the project, and the Authority's designation of FDAD Maple as a redeveloper was made in accordance with the Redevelopment Law.

III.

We first address Team Rhodi's argument that its appeal of the blight designation is not time-barred. We disagree.

When the City designated the study area as an area in need of redevelopment, the Redevelopment Law required any challenge to that determination to be brought within forty-five days after the City's determination. N.J.S.A. 40A:12A-6(b)(7). Team Rhodi missed that deadline by more than fifteen years. Nevertheless, Team Rhodi relies on Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361 (App. Div. 2008) in support of its assertion that its challenge is timely. Team Rhodi's reliance on DeRose is misplaced.

In DeRose, we noted that, "[a]t its core, due process requires adequate notice and an opportunity to be heard, whether analyzed under the Federal Constitution or under the New Jersey Constitution." 398 N.J. Super. at 403. Thus,

12                                                                              A-3515-17T2

unless a municipality provides the property owner with contemporaneous written notice that fairly alerts the owner that (1) his or her property has been designated for redevelopment, (2) the designation operates as a finding of public purpose and authorizes the municipality to acquire the property against the owner's will, and (3) informs the owner of the time limits within which the owner may take legal action to challenge that designation, an owner constitutionally preserves the right to contest the designation, by way of affirmative defense to an ensuing condemnation action. Absent such adequate notice, the owner's right to raise such defenses is preserved, even beyond forty-five days after the designation is adopted.

[Id. at 367-68.]

In the trial court, Team Rhodi did not assert its challenge to the blight designation as a defense to the condemnation action on its property. Rather, it attempted to belatedly attack the blight designation in an effort to invalidate the blight designation of the entire study area. As the trial court found, no precedent exists for such a belatedly broad challenge to a municipality's determination an area is in need of redevelopment.

Even if Team Rhodi had challenged the blight designation in the context of a defense to a condemnation action concerning its seven lots, it is questionable whether such attack would have prevailed. Team Rhodi did not own property within the study area when the blight designation was made. It is not clear from the record whether Team Rhodi even existed at that time. Team Rhodi has made no effort to

13

explain what interest it had that entitled it to due process when the City made the blight determination. Moreover, because Team Rhodi purchased property in the study area, it was on constructive if not actual notice of the blight designation.

In any event, even if Team Rhodi is entitled to assert a due process right based on the City's action more than fifteen years before Team Rhodi began purchasing property in the study area, it did not do so in the context of a defense to a condemnation action.

The time for filing an action in lieu of prerogative writs is also restricted by Rule 4:69-6(a), which states in pertinent part: "No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed . . . ." Rule 4:69-6(c) authorizes a court to "enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires." Our Supreme Court has defined three categories that qualify under this exception: "(1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 152 (2001) (quoting Brunetti v. Borough of New Milford, 68 N.J. 576, 586 (1975)). Team Rhodi's claim falls within none of these exceptions.

We do not discern from the record any novel or constitutional questions presented by Team Rhodi's claims. The municipal authority under the Redevelopment Law is well settled and <u>DeRose</u> was decided more than a decade ago. Moreover, it is evident from the record Team Rhodi is seeking to vindicate a private rather than a public interest.

Even if Team Rhodi's argument is deemed an attempt to vindicate an important public interest, the decision "to grant or deny an enlargement involves a sound exercise of judicial discretion, with consideration given both to the potential impact upon the public body and upon the plaintiff." <u>Tri-State Ship Repair & Dry Dock Co. v. City of Perth Amboy</u>, 349 N.J. Super. 418, 424 (App. Div. 2002) (citing <u>Southport Dev. Group v. Wall Twp.</u>, 310 N.J. Super. 548, 556 (App. Div. 1998)). Significantly, "[t]he longer a party waits to mount its challenge, the less it may be entitled to an enlargement." <u>Ibid.</u> Importantly, "[t]he 45-day time frame contained within [<u>Rule</u>] 4:69-6 'is designed to give an essential measure of repose to actions taken against public bodies.'" <u>Id.</u> at 423 (quoting <u>Washington Twp. Zoning Bd. v. Planning Bd.</u>, 217 N.J. Super. 215, 225 (App. Div. 1987)). "Because of the importance of stability and finality to public actions, courts do not routinely grant an enlargement of time to file an action in lieu of prerogative writs." <u>Ibid.</u> (citing <u>Cty. of Ocean v. Zekaria Realty Inc.</u>, 271 N.J. Super. 280 (App. Div. 1994)).

Granting the relief Team Rhodi seeks would undermine if not entirely subvert the foregoing principles. The trial court did not abuse its discretion by declining to enlarge the period of time provided in Rule 4:69-6(a) by more than fifteen years.

IV.

We have considered Team Rhodi's remaining arguments and with the exception of the following brief comments consider them to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). Team Rhodi suggests that the Authority's "decision to use eminent domain to take [Team Rhodi's] property is not authorized under the [Redevelopment Law]" because Team Rhodi has the ability to develop the property itself. Acknowledging our contrary holding in Vineland Constr. Co., Inc. v. Twp. of Pennsauken, 395 N.J. Super. 230, 253 (App. Div. 2007), Team Rhodi urges that we reject the majority's interpretation and adopt the reasoning of the dissenting judge. We decline to do so.

We also reject Team Rhodi's challenge to the designation of FDAD Maple as a redeveloper. "[T]he designation of a redeveloper, like all municipal actions, is a discretionary act, vested with a presumption of validity, that will be upheld where any state of facts may reasonably be conceived to justify the action." Id. at 255. Moreover, "[m]unicipal bodies 'are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their

enactments rest upon some rational basis within their knowledge and experience.'" Id. at 256 (quoting Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564-65 (1975)). Team Rhodi's argument—based essentially on a reiteration that it is capable of developing its property, and that FDAD Maple was selected for political reasons, is irrelevant in the former instance and speculative at best in the latter. Team Rhodi's arguments hardly rise to "proofs that preclude the possibility that there could have been any set of facts known to the legislative body . . . [that] would rationally support a conclusion that the enactment is in the public interest." Id. at 256 (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998)) (alteration in original).

We reject Team Rhodi's Fifth Amendment challenge to the City's use of eminent domain because, as the trial court determined, and as the record amply demonstrates, the redevelopment of the study area following the blight designation demonstrates the City's action effectuated the public purpose of the redevelopment plan.

Last, we find no abuse of discretion by the trial court in denying Team Rhodi the discovery to which it now claims it was entitled.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION