248 N.J. Super. 508 (1991)
591 A.2d 950
NEW JERSEY SHORE BUILDERS ASSOCIATION, A NEW JERSEY NON-PROFIT CORPORATION, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF MARLBORO, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1991.
Decided March 18, 1991.
*509 Before Judges ANTELL and SCALERA.
Arthur Goldzweig argued the cause for appellant (Arthur Goldzweig, attorney, Simon L. Kaufman on the brief).
Steven M. Berlin argued the cause for respondent (Giordano, Halleran and Ciesla, attorneys, Steven M. Berlin, of counsel and on the brief).
*510 PER CURIAM.
The Township of Marlboro (Marlboro or the Township) appeals from a summary judgment entered on behalf of New Jersey Shore Builders Association (NJSBA)[1] declaring that land developers did not have to pay for street lighting costs incurred on streets dedicated to the Township as regularly required in connection with the issuance of certificates of occupancy issued for homes. We affirm.
NJSBA challenged Marlboro's practice of requiring developers to pay the costs of electricity for lighting on those streets dedicated as a condition of subdivision or site plan approval, which have homes constructed proximate thereto that have been issued certificates of occupancy. In these cases, these streets have not yet been accepted by Marlboro and thus the posted performance bonds have not yet been released.
According to the parties' stipulation of facts, Marlboro receives electric service from Jersey Central Power and Light, (JCP & L) a duly franchised public utility. The Township's land development regulations provide that developers seeking subdivision or site plan approval for a proposed residential development must provide for the cost of construction and installation of underground subdivision electric facilities, to be constructed and installed by JCP & L. Generally, the equipment remains JCP & L's property, which includes the underground lines, lamp posts and other hardware for the street lighting as distinguished from the actual electricity which illuminates the street lights.
Marlboro does not inspect the subdivision electric facilities nor are they subject to its bonding requirements. The approximate *511 cost of electricity for two years is included in the calculation of the required performance bonds. Prior to the issuance of a certificate of occupancy for any dwelling in the development, the street lighting facilities must be completed and operational. The street lighting costs are deemed to be the developer's responsibility until the streets are accepted by Marlboro and the performance bond covering the street is released. Marlboro provides various services including police protection, fire, emergency services and code enforcement for those areas, but does not provide services such as roadway maintenance and repair, street cleaning, snow removal, ice abatement and fall cleanup, until the streets have been accepted.
In granting summary judgment the trial judge found no statutory or decisional authority which authorized Marlboro's practice of requiring the developer to pay lighting costs until the street is accepted. He stated that it is the municipality's decision when to illuminate the streets and it must pay for that electricity. Moreover, he held that "[t]he illumination of streets has nothing to do with the installation and/or repair of the roads in a development."
Marlboro argues that, although there is no such express authority the practice is logically consistent and constitutional, especially given the presumption of validity of its actions.
The plaintiffs argue simply that the Township's practice is beyond the scope of its delegated powers embodied in the Municipal Land Use Law (M.L.U.L.), N.J.S.A. 40:55D-1 et seq. Further, N.J.S.A. 40:55D-53(a)(1) does not permit street lighting costs to be a bondable improvement since the public utility will own the utility upon installation.
A municipality can exercise subdivision controls only by virtue of enabling legislation. Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. 582, 593, 334 A.2d 30 (1975). Any exercise of that power must be consistent with such legislation. Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20-21, 364 A.2d 1016 (1976), cert. denied sub nom. Feldman *512 v. Weymouth Tp., 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). Ordinances thus adopted are accorded a presumption of validity, unless overcome by an affirmative showing of arbitrariness or unreasonableness. Id., Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973).
In this case, however, we agree that there is no statutory provision which expressly authorizes Marlboro's practice. N.J.S.A. 40:55D-53a(1) and (2) state:
a. Before recording of final subdivision plats or as a condition of final site plan approval or as a condition to the issuance of a zoning permit pursuant to subsection 52d. of this act, the approving authority may require and shall accept in accordance with the standards adopted by ordinance for the purpose of assuring the installation and maintenance of on-tract improvements:
(1) The furnishing of a performance guarantee in favor of the municipality in an amount not to exceed 120% of the cost of installation for improvements it may deem necessary or appropriate including: streets, grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments ... water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, erosion control and sedimentation control devices, public improvements of open space and, in the case of site plans only, other on-site improvements and landscaping.
(2) Provision for a maintenance guarantee to be posted with the governing body for a period not to exceed 2 years after final acceptance of the improvement, in an amount not to exceed 15% of the cost of the improvement. In the event that other governmental agencies or public utilities automatically will own the utilities to be installed or the improvements are covered by a performance or maintenance guarantee to another governmental agency, no performance or maintenance guarantee, as the case may be, shall be required by the municipality for such utilities or improvements. (emphasis added).
It is the court's function to construe statutes as they are written. Dacunzo v. Edgye, 19 N.J. 443, 451, 117 A.2d 508 (1955). Statutes must be strictly construed to keep within the legislative intent. "The courts are not at liberty to indulge in a presumption that the Legislature intended something more than what it actually wrote in the law." Graham v. Asbury Park, 64 N.J. Super. 385, 394, 165 A.2d 864 (Law Div. 1960) rev'd on other grounds 69 N.J. Super. 256, 174 A.2d 244 (App.Div. 1961) aff'd 37 N.J. 166, 179 A.2d 520 (1962).
*513 The legislative purpose of the M.L.U.L. authorizing the enactment of subdivision ordinances is to protect the public interest by requiring installation of necessary improvements and assuring such through a performance bond prior to subdivision approval. Divan Builders v. Wayne Tp. Planning Bd., supra, 66 N.J. at 595-597, 334 A.2d 30; Pasaro Builders v. Piscataway Tp., 184 N.J. Super. 344, 347, 446 A.2d 187 (App. Div. 1982), appeal dismissed 93 N.J. 267, 460 A.2d 671 (1983). See Toll Bros., Inc. v. Tp. of Greenwich, 244 N.J. Super. 514, 517, 582 A.2d 1276 (App.Div. 1990). (It is a legislative directive that a municipality must accept a performance guarantee. N.J.S.A. 40:55D-53 does not confer an option upon the municipality.)
In the instant case, the cited statute clearly provides that no performance guarantee shall be required for utilities or improvements when public utilities will "automatically own" them upon installation. Therefore, Marlboro may not require a performance bond from the developer for the installation of the subdivision electric facilities since, concededly, JCP & L owns the utility upon its completion. Moreover, the developer is paying the cost of installation to JCP & L.
Finally, Marlboro demands payment for the cost of the electricity to illuminate the streets for two years, which is included in the performance bond. Neither the statute itself, nor case law, defines whether electricity costs are included in "street lighting," or are considered an improvement. Marlboro relies upon Home Bldrs. League, Etc. v. Evesham Tp., 182 N.J. Super. 357, 359, 440 A.2d 1361 (App.Div. 1981). That case decided that release of a performance bond by a municipality did not necessarily constitute full and complete acceptance of dedication and where improvements are complete and the homes occupied, the developer must continue to pay for all street-related services, including "street lighting." However, the precise issue involved here was not pivotal in that case. Moreover, that case does not appear to be a situation in which a *514 public utility owns the utility upon completion. Cf. State v. Birch, 115 N.J. Super. 457, 280 A.2d 210 (App.Div. 1971) and Eastern Planned Community v. Middletown, 235 N.J. Super. 467, 563 A.2d 81 (Law Div. 1989).
Here, we conclude that the cost of electricity is also not an improvement and is therefore not bondable. See Black's Law Dictionary, 682 (5th Ed. 1979). Electricity is intangible and is not analogous to buildings or other permanent structures. See Washington v. City of Elizabeth, 245 N.J. Super. 325, 585 A.2d 431 (Law Div. 1990) (Neither the installation nor the maintenance of an underground utility line constitutes an improvement to real property. It is only a conduit to transmit electricity, water and gas.) Although there is a scarcity of caselaw interpreting N.J.S.A. 40:55D-53a, the M.L.U.L. does not expressly grant the Township authority to charge developers the cost of electricity.
Marlboro insists that N.J.S.A. 40:67-23.1 is dispositive of this issue. However, the statement by the Senate Committee made in connection therewith specifically provides that the statute is inapplicable "in any instance where the dedication of the road to the municipality is required as a condition of approval of a site plan or subdivision." Klink v. Tp. Committee of Monroe Tp., 181 N.J. Super. 25, 436 A.2d 545 (App.Div. 1981).
Marlboro also relies upon N.J.S.A. 40:67-23.3, which was approved January 1990 to be effective January 1, 1991, which we also find to be inapposite.[2] It is the municipality's obligation to pay for street lighting on all public roadways that warrant such lighting. In the instant situation, the streets are dedicated to be public streets, but are simply not yet accepted. Merely because a statute was enacted covering a municipality's obligation on purely private streets does not warrant the interpretation that the Legislature purposely did not want the Township *515 to pay for such services on dedicated roads not yet accepted.
Affirmed.
NOTES
[1] NJSBA is a trade association comprised of some 500 individual builders, developers, contractors, subcontractors, material suppliers, real estate brokers, banking institutions and other entities related to the building industry, some of which are actively engaged in residential real estate development and construction in Marlboro Township.
[2] Marlboro raises this statute for the first time on this appeal. Cf. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).