710 A.2d 596

STATE OF NEW JERSEY, PLAINTIFF, v. RAYMOND FREYSINGER, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Monmouth County

Decided January 29, 1997.

*Elena Tompkins,* Assistant Prosecutor, for plaintiff (*John Kaye,* Monmouth County Prosecutor).

*James J. Addonizio,* for defendant (*Rudnick, Addonizio, Pappa & Comer,* attorneys).

O'HAGAN, J.S.C.

This case presents interesting questions as to whether firearms initially seized following the issuance of a domestic violence complaint must be returned to the defendant, Raymond Freysinger, given allegations by the Monmouth County Prosecutor's Office that he is an habitual drunkard, an alcoholic, and/or poses a threat to the public at large, and more particularly, to his girlfriend. It must be understood no one has contended that defendant has used his firearms for anything other than hunting. For reasons later described, defendant's girlfriend, Jane Schappert, filed a complaint against him alleging domestic violence, but, thereafter, withdrew that complaint. The prosecutor's office, in a timely fashion, filed a complaint seeking the forfeiture of defendant's firearms and the revocation of any permits or license issued to defendant allowing him to possess (*N.J.S.A.* 2C:58–3) and/or to carry firearms (*N.J.S.A.* 2C:58–4).

Following a hearing, the prosecutor's application is granted in its entirety.

In recent years, controversy has raged throughout the nation regarding governmental control over the possession of firearms. Both proponents and opponents of gun control, have argued with zeal and determination, often stirring strong emotions on the part of the citizenry, as well as elected officials. Often the competing groups have raised cogent, logical arguments to support their respective position. Federal and State legislative bodies have responded in a variety of ways. However, given the competing pressures, the legislative response often may not be clear and, on occasion, seems to run in different directions. The court, in this action, is called upon to consider the New Jersey Statute concerning persons entitled to possess firearms.

Certainly the court cannot, and should not, substitute its judgment for that of the Legislature. *Dacunzo v. Edgye*, 19 *N.J.* 443, 451, 117 *A.*2d 508 (1955); *New Jersey Shore Builders Ass'n v. Township of Marlboro*, 248 *N.J.Super.* 508, 512, 591 *A.*2d 950 (App.Div.1991). Rather, the court's role is to interpret the legislation, *In re Sussex County Mun. Utils. Auth.*, 198 *N.J.Super.* 214, 219, 486 *A.*2d 932 (App.Div.) *certif. denied*, 101 *N.J.* 267, 501 *A.*2d 934 (1985), even though the law, at first blush, might appear ambiguous. *Accountemps Div. of Robert Half of Philadelphia, Inc. v. Birch Tree Group, Ltd.*, 115 *N.J.* 614, 622, 560 *A.*2d 663 (1989). In construing the statute, the court must consider its ultimate aim or purpose. *Fiore v. Consolidated Freightways*, 140 *N.J.* 452, 466, 659 *A.*2d 436 (1995); *In re Mut. Benefit Life Ins. Co.*, 258 *N.J.Super.* 356, 375, 609 *A.*2d 768 (App.Div.1992). That is, the provisions of the statute must be interpreted in such fashion as to accomplish its intended purpose. *State v. Gill*, 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966).

A brief statement of the facts is helpful to an understanding of the courts resolution of the issue.

Defendant Freysinger and his girlfriend, Jane Schappert, have lived together for some fourteen years. Ms. Schappert's daughter, now seventeen years of age, lives in the household as well.

On August 22, 1995, Ms. Schappert, with a friend, was drinking in a bar located in the Borough of Keansburg. The defendant Freysinger, at the same time and at the same bar, was also drinking although, throughout the time period in question, the couple did not socialize with each other, but rather were speaking to and relating with others. After several hours, Ms. Schappert advised defendant she was leaving the bar and going home. Ms. Schappert advised the police that she and defendant argued at this point. Since the couple's residence was nearby, she began walking. Defendant, without notice to Ms. Schappert, left the bar shortly thereafter and, while driving, struck Ms. Schappert from the rear, breaking off his side view mirror, knocking his girlfriend to the ground. Mr. Freysinger did not stop, but rather kept going towards home. Some passers-by witnessed the accident, attended to Ms. Schappert, and advised the police that defendant was the driver of the hit and run vehicle. When the police arrived at defendant's residence, Mr. Freysinger denied he was the driver of the car which had struck Ms. Schappert. At the hearing, the responding officer testified defendant was obviously intoxicated and he was, therefore, charged with driving while under the influence *(N.J.S.A.* 39:4–50) and assault by auto *(N.J.S.A.* 2C:12–1c)* among other charges.

Fortunately, Ms. Schappert's injuries were not serious. As above noted, she did, however, file a complaint alleging domestic violence against defendant. Later, Ms. Schappert withdrew the domestic violence complaint, marking the second time within two months that she had withdrawn a domestic violence complaint filed against defendant.

Ultimately defendant pled guilty to driving while under the influence. The disposition of the other charges was not made clear at the hearing, although the charge of assault by auto was dismissed.

At the hearing, Ms. Schappert maintained she was not afraid of defendant, indeed both she and her daughter continued to reside with him. Mr. Freysinger denied being an alcoholic, or an habitu-

al drunkard, and contended neither his girlfriend nor anyone else had any reason to be afraid of him. In that connection, however, it must be noted, while defendant denied at the hearing any knowledge that his motor vehicle had struck Ms. Schappert, he did admit he knew at the time that his car had struck a person. Notwithstanding this knowledge, Mr. Freysinger left the scene, went home, and later denied involvement in a hit and run accident.

Finally, it must be noted that Mr. Freysinger's motor vehicle abstract, admitted into evidence, reveals two convictions for driving while under the influence, *N.J.S.A.* 39:4–50, and two convictions for refusal to submit to a chemical test, *N.J.S.A.* 39:4–50.4a, involving three separate incidents over a thirteen year period.

*N.J.S.A.* 2C:58–3(c) in its pertinent parts provides:

No handgun permit or firearm purchasers identification card shall be issued;

(2) To ... any person who is presently an habitual drunkard;

(3) To ... any alcoholic ...

There can be no question the Legislature reasonably intended to keep weapons out of the hands of persons who might be dangerous. *State v. Volpini,* 291 *N.J.Super.* 401, 411, 677 *A.2d* 780 (App.Div.1996). Certainly people unable to control themselves because of excess drinking have the potential to be dangerous. *See, Hoffman v. Union County Prosecutor,* 240 *N.J.Super.* 206, 572 *A.2d* 1200 (Law Div.1990). The words used by the Legislature in this instance, however, do not lend themselves to easy definition or understanding. For sure, the Legislature intended to distinguish between an alcoholic and a habitual drunkard. That is, satisfactory proof that a person is an alcoholic in all but the rarest of circumstances requires expert testimony. *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 597–99, 538 *A.2d* 794 (1988). That is, alcoholism is an illness or condition recognized by the medical profession as affecting its victims regardless of present consumption of alcoholic beverages. *N.J.S.A.* 26:2B–8; *Scully v. Scully,* 122 *N.J.Super.* 94, 98, 299 *A.2d* 93 (Ch.Div.1972). Thus, an alcoholic, perhaps, might be denied a permit even if he had not consumed alcohol for years. However, in all but the rarest of

circumstances, the official in charge of the issuance of a firearms' license or permit does not have independent access to an applicant's medical records or any other means to reasonably conclude the applicant is an alcoholic. Consequently, permits or licenses can only rarely be denied on the basis a person is an alcoholic absent his voluntary disclosure of such information. *Adams Theatre Co. v. Keenan*, 12 *N.J.* 267, 274–76, 96 *A.2d* 519 (1953), *Trombetta v. Mayor and Comm'rs of Atlantic City*, 181 *N.J.Super.* 203, 224–25, 436 *A.2d* 1349 (Law Div.1981), *aff'd* 187 *N.J.Super.* 351, 454 *A.2d* 900 (App.Div.1982). However, frequently the licensing authority has the means to learn whether the applicant habitually gets drunk. The source of this information includes, but is not limited to, the applicant's driving record, as well as the applicant's involvement in violent disputes with family members or others, etc. That is, official records might indirectly provide evidence of a person's excessive drinking or that a person is an habitual drunkard.

It might be reasonably concluded that a person who has been found guilty of driving while under the influence of alcoholic beverages on two occasions and has twice pled guilty to the refusal to submit to a breathalyser test, all within a thirteen year period, might be reasonably described as an habitual drunkard. In this instance, corroboration of such classification comes from defendant's admission at the hearing that on two separate occasions he has enrolled in, and participated in, Alcoholics Anonymous. Further, defendant's testimony at the hearing to the effect that prior to his most recent participation in AA, he, on a regular basis, that is to say at least two times a week, consumed a six pack of beer over the course of an evening, does nothing to dispel the conclusion that defendant is an habitual drunkard. Nor is such conclusion dispelled by defendant's admission that he hit a person with his vehicle yet fled from the accident scene.

The problem arises from the Legislature's use of the word "presently" in the context of the words habitual drunkard. Defendant argues that since he has not had an alcoholic drink for the

three months prior to the hearing, he cannot, therefore, be considered presently an habitual drunkard. Such interpretation by defendant is strained, *Scully, supra,* 122 *N.J.Super.* at 97, 299 *A.*2d 93 (citing *Dorian v. Dorian,* 298 *Ill.* 24, 131 *N.E.* 129, 130–31 (1921)), impractical, *Schneider v. Schneider,* 142 *N.J.Super.* 512, 516, 362 *A.*2d 61 (Ch.Div.1976), and contrary to common sense, *Id., supra,* 142 *N.J.Super.* at 516, 362 *A.*2d 61; *Scully, supra,* 122 *N.J.Super.* at 98, 299 *A.*2d 93.

It is well established that courts, when interpreting legislation, should not give disproportionate importance to isolated words. *Waterfront Comm'n of New York Harbor v. Mercedes–Benz of North Am., Inc.,* 99 *N.J.* 402, 414, 493 *A.*2d 504 (1985). Indeed, the literal words of a statute must on occasion give way to the statute's clear intent. *New Jersey Builders, Owners and Managers Ass'n v. Blair,* 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972). Certainly it must be presumed that the Legislature knew what it was doing when it enacted the legislation. *Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 227, 638 *A.*2d 1301 (1994); *State v. Vonderfecht,* 284 *N.J.Super.* 555, 559, 665 *A.*2d 1145 (App.Div. 1995). Finally, when two interpretations are possible, the court should strive to give legislation that interpretation which accords with common sense, *American Cyanamid Co. v. State Dep't of Envtl. Protection,* 231 *N.J.Super.* 292, 312, 555 *A.*2d 684 (App.Div.) *cert. denied,* 117 *N.J.* 89, 563 *A.*2d 847 (1989), and which carries out the legislative purpose. *Roman v. Sharper,* 53 *N.J.* 338, 341, 250 *A.*2d 745 (1969).

■ In the context of this legislation, the word "presently" cannot reasonably mean at this hour or on this day, nor perhaps even be limited to a time period within this month. If such interpretation were accepted, an applicant for a gun permit, to be successful, need merely maintain sobriety for a short time, perhaps days, prior to his application for the permit, or in this case, prior to the hearing. Since few persons apply for a gun permit or a license when drunk, if defendant's interpretation were accepted, few permits might be denied on this basis. Clearly, in using the

word presently, the Legislature sought to distinguish the present circumstance, for instance, from situations where a person years before had been an habitual drunkard. Clearly, the Legislature did not seek to deny a gun permit to a person who had not been drunk over the preceding reasonable time period yet, in his youth for instance, had been an habitual drunkard. On the other hand, it is reasonable to conclude that it would be dangerous to authorize a person to possess firearms merely because over the past several months he had stopped drinking, notwithstanding his recent brushes with the law, drunken driving, and excessive drinking. Common sense requires that mere recent sobriety alone, over a very short time period, does nothing to dispell the conclusion that a person is an habitual drunkard when that person has the above cited infractions on his driving record, drinks to the extent reported by Mr. Freysinger and flees from the scene of an accident after having been drinking for several hours at a nearby tavern.

If a contrary interpretation prevailed, the issuing authority might be forced to issue a permit to a person who swore he had been sober for a scant three months even though the officer might have personal knowledge or police records establishing that for years the applicant had been an habitual drunkard. Given the legislative intent to keep guns out of the hands of dangerous persons, this could not possibly have been within the Legislature's contemplation. Obviously, such contrary interpretation imposes great practical difficulties upon the Chief of Police or any other official authorized to issue gun permits.

The words presently an habitual drunkard, when used in the context of this statute, are more than satisfied by defendant's conduct. The court, therefore, concludes that defendant is presently an habitual drunkard as defined in the statute and, therefore, he may not possess firearms and his permits and licenses to do so are revoked.