801 A.2d 380 (2002)
353 N.J. Super. 4
BUILDERS LEAGUE OF SOUTH JERSEY, INC., a New Jersey Non-Profit Corporation, Plaintiff-Respondent/Cross-Appellant,
v.
BURLINGTON COUNTY PLANNING BOARD, Burlington County Engineering Department, and Burlington County, a Body Corporate and Politic of the State of New Jersey, Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 2002.
Decided July 2, 2002.
*382 Jean Hartman Culp, Senior Assistant County Solicitor, argued the cause for appellants/cross-respondents (Evan H.C. Crook, Burlington County Solicitor, attorney; Ms. Culp on the brief).
Robert M. Washburn, Cherry Hill, argued the cause for respondent/cross-appellant (Flaster, Greenberg, attorneys; Mr. Washburn, of counsel and on the brief).
Before Judges BRAITHWAITE, COBURN and WEISSBARD.
*381 The opinion of the court was delivered by WEISSBARD, J.A.D.
Defendants, Burlington County, Burlington County Planning Board and Burlington County Engineering Department (collectively "the County"), appeal from that part of an order invalidating a portion of the Burlington County Land Development Review Resolution (1989 Revision) ("LDRR"). Plaintiff, Builders League of South Jersey, Inc.,[1] cross-appeals from those portions of the same order upholding certain parts of the LDRR. We conclude that the appeals of both parties have merit and therefore reverse.
Plaintiff filed a complaint in lieu of prerogative writs challenging the validity of sections 2.01B, 2.03, 4.17, and 5.12[2] of the *383 LDRR and practices of the County that (a) establish site plan and subdivision jurisdiction over development projects; (b) mandate that preliminary approval expires after a three-year period of time; and (c) permit conditions to be added at the time of final approval where such conditions were not a part of the preliminary approval. Recognizing that the complaint did not attack any particular action taken by the County under the LDRR, but, rather, challenged the validity of specific sections of the LDRR, the motion judge treated the complaint as one seeking a declaratory judgment. N.J.S.A. 2A:16-50 to -62. We note that the County did not challenge plaintiff's standing before the trial court, nor has it done so on appeal. See N.J.S.A. 2A:16-53; N.J. Builders Ass'n v. Mayor and Tp. Comm. of Bernards Tp., 108 N.J. 223, 227, 528 A.2d 555 (1987); N.J. Shore Builders Ass'n v. Tp. of South Brunswick, 325 N.J.Super. 412, 419-20, 739 A.2d 956 (App.Div.1999).
Upon cross-motions for summary judgment,[3] the motion judge issued a letter opinion holding, in pertinent part, that: (1) the LDRR, to the extent it purports to exercise site plan or subdivision jurisdiction over applications for developments that are not along or abutting a county road or which do not affect county drainage facilities and are more than one acre in size, is invalid; (2) sections 4.17 and 5.12 of the LDRR are valid, pursuant to the authority provided to the County by the County Planning Enabling Act, N.J.S.A. 40:27-1 to -6.13; (3) the County Planning Board is authorized to impose reasonable time limits on its approvals and is authorized to impose additional conditions on subdivisions or site plans after the time limit has expired or when the applicant revises a development plan.[4]
An order was entered which, in pertinent part, contained the following provisions:
4. The County Land Development Review Resolution to the extent that it purports to exercise jurisdiction over development applications which are not along or abut a County Road or which do not affect County drainage facilities (including ditches, swales, culverts, bridges, subsurface pipes or like natural or man-made drainage facilities) and are more than one acre in size said jurisdiction is improper.
5. Sections 4.17 and 5.12 of the Burlington County Land Development Resolutions are declared to be valid provisions and in accordance with the authority provided to the Burlington County Board of Chosen Freeholders by the Legislature through the County Planning Enabling Act.
6. The Burlington County Planning Board is authorized to impose reasonable time limits in its approvals and is authorized to impose additional conditions on subdivision or site plan after the *384 time limit has expired or when the applicant revises the development plan.
After denial of a motion for reconsideration, the County filed this appeal challenging the court's ruling with respect to sections 2.01 and 2.03 of the LDRR and plaintiff cross-appealed with respect to the decision concerning sections 4.17 and 5.12.

I
We will first address the issue of site plan jurisdiction under the LDRR. The resolution provides in relevant part as follows:
2.01 Site Plans. The following site plans for land developments are subject to Planning Board review:
A. Developments which are along a county road or which affect county drainage facilities and are:
i. proposed new or change in commercial use;
ii. proposed new or change in industrial use;
iii. proposed new or change in multi-family residential structure containing five or more units;
iv. any use of property other than a single single-family residential use which includes off-street parking or the creation of an impervious surface in excess of 2,000 square feet;
B. Developments which are not along a county road which include one acre or more of new or additional impervious surface;
C. Any development which will cause storm water to drain directly or indirectly to a County road or through any drainageway, culvert, pipe or facility that the County constructed or is responsible to maintain.

* * *[5]
The motion judge said the following with respect to the provision:
In general, there is little dispute that the County may review all subdivisions and site plans wherever they are situate except those site plans under one acre in size. N.J.S.A. 40:27-6.6(e). The purpose of such a review is to give an opportunity to determine whether jurisdiction to impose conditions on the project exists. There is also little doubt that County Planning Board jurisdiction, in sharp contrast to the plenary zoning and planning authority accorded to municipalities under the MLUL, is limited depending on whether the proposed project (a) abuts a county road; or, (b) affects County drainage facilities. N.J.S.A. 40:27-6.2 and N.J.S.A. 40:27-6.6; Kode Harbor Dev. Assoc. v. Atlantic, 230 N.J.Super. 430, 553 A.2d 858 (App.Div.1989); Squires Gate v. County of Monmouth, 247 N.J.Super. 1, 588 A.2d 824 (App.Div.1991). Thus, to the extent that the County Resolution, Section 2.01B purports to grant jurisdiction over projects over an acre in size that do not abut a county road, it exceeds powers conferred by the Act unless the proposed project will somehow affect county drainage facilities. Because N.J.S.A. 40:27-6.6(e) declares site plans under one acre exempt, it does not follow that the County has jurisdiction over all site *385 plans over one acre. A site plan of such size must either abut a county road or affect county drainage facilities to be subjected to County conditions of approval. Furthermore, if the only basis for county jurisdiction is the impact the project has on drainage to or from a county road or facility, then drainage controls are the only condition which may be imposed. Kode, Id.; Squires Gate, Id.
We agree.
With respect to the exercise of jurisdiction over site plans and subdivisions, reflected in sections 2.01B and 2.03, the County's authority, as the motion judge recognized, can only flow from the County Planning Enabling Act, N.J.S.A. 40:27-6.1 to -6.13. As we noted in Kode Harbor Development Associates v. County of Atlantic, 230 N.J.Super. 430, 440, 553 A.2d 858 (App.Div.1989), it is "well-settled that a county's powers are restricted to those granted to it by the Legislature." Specifically, N.J.S.A. 40:27-6.6, addressing site plans, provides in relevant part:
The governing body of any county having a county planning board may provide for the review of site plans for land development along county roads or affecting county drainage facilities as provided in subsection e. of this section and for the approval of such development as hereinafter set forth and limited for the purpose of assuring a safe and efficient county road system. Such review and approval shall be in conformance with procedures and standards adopted by resolution or ordinance as appropriate of the governing body. Notice of the public hearing on a proposed resolution or ordinance of the governing body establishing procedures and standards to govern the review and regulation of land development along county roads or affecting county drainage facilities as provided in subsection e. of this section, and a copy of such resolution or ordinance, shall be given by delivery or by certified mail to the municipal clerk, secretary of the planning board and secretary of the board of adjustment of each municipality in the county at least 10 days prior to such hearing. These procedures and standards shall be limited to:

* * *
c. The requirement of physical improvements subject to recommendations of the county engineer relating to the safety and convenience of the traveling public, including drainage facilities, or other highway and traffic design features as may be deemed necessary on such county road or roads in accordance with the engineering and planning standards established in the site plan review and approval resolution or ordinance of the governing body.

* * *
e. The requirement of adequate drainage facilities and easements when, as determined by the county engineer in accordance with county-wide standards, the proposed site plan will cause storm water to drain either directly or indirectly to a county road or through any drainage-way, structure, pipe, culvert or facility for which the county is responsible for the construction, maintenance or proper functioning.
Site plans for land development not along a county road that include less than 1 acre of impervious surfaces are exempt from county site plan review.
Plaintiff contends that section 2.01B is invalid because it purports to exercise "jurisdiction over and impose requirements on all real estate developments that exceed one acre in size, even though the development does not abut a county road or affect county drainage facilities." As *386 noted, the motion judge agreed with this contention.
The County correctly points out that 2.01B only deals with site plan review.[6] All that the provision says in that regard is that all site plan applications are subject to review by the County Planning Board. The purpose of such review is, as the motion judge said, to permit the County to determine if it has jurisdiction over the particular site plan such that conditions may be attached to the approval. Plaintiff is correct, however, that the unlimited power of review in 2.01B is not entirely consistent with N.J.S.A. 40:27-6.6 which permits review of site plans only where the land development is along a county road or affects county drainage facilities. However, plaintiff has totally ignored the County's concession that 2.01B "contains a true, but incomplete, statement of site plan jurisdiction.... To be complete, section B would also say that the developments must also affect county drainage facilities to be subject to review." Indeed, the County goes on to point out the certification from its County Planning Engineer, submitted to the trial court, that in the past twenty years the County has never taken jurisdiction over a development not along a county road that had less than one acre of impervious coverage. The County states that it will correct 2.01B to remedy this apparent defect. Because it is clear that site plan jurisdiction exists only for developments that are either along a county road or affect county drainage facilities in the specified manner, N.J.S.A. 40:27-6.6, with an exception for developments not along a county road that include less than one acre of impervious surfaces, we agree that 2.01B as drafted is invalid and must be amended appropriately to comply with the statute. See 36 New Jersey Practice, Land Use Law § 14.52, at 318 (David J. Frizell) (rev.2d ed.1999).

II
We turn next to the question of subdivision jurisdiction. The LDRR provides as follows:
2.03 All subdivisions of land are subject to Planning Board review, except those which are categorized as exempt....
With respect to this provision the motion judge said:
In the case of subdivisions under the Resolution, Section 2.03, again, notwithstanding the broad language thereof, it is only subdivisions which abut a county road or affect drainage to, from or along county facilities upon which the County may impose conditions of approval.
The statute provides in pertinent part as follows:
The board of freeholders of any county having a county planning board shall provide for the review of all subdivisions of land within the county by said county planning board and for the approval of those subdivisions affecting county road or drainage facilities as set forth and limited hereinafter in this section. Such review or approval shall be in accordance with procedures and engineering and planning standards adopted by resolution of the board of chosen freeholders. *387 These standards shall be limited to:
a. The requirement of adequate drainage facilities and easements when, as determined by the county engineer in accordance with county-wide standards, the proposed subdivision will cause storm water to drain either directly or indirectly to a county road, or through any drainageway, structure, pipe, culvert, or facility for which the county is responsible for the construction, maintenance, or proper functioning;
b. The requirement of dedicating rights-of-way for any roads or drainageways shown on a duly adopted county master plan or official county map;
c. Where a proposed subdivision abuts a county road, or where additional rights-of-way and physical improvements are required by the county planning board, such improvements shall be subject to recommendations of the county engineer relating to the safety and convenience of the traveling public and may include additional pavement widths, marginal access streets, reverse frontage and other county highway and traffic design features necessitated by an increase in traffic volumes, potential safety hazards or impediments to traffic flows caused by the subdivision[.]

[N.J.S.A. 40:27-6.2a-c.]
Here again, the section under attack only deals with subdivision review, providing that all subdivisions are subject to County Planning Board review.[7] This unlimited power of review is completely15 consistent with the enabling statute quoted above. Thus, on its face, 2.03 is valid. However, the real dispute concerns the County's interpretation of its jurisdiction to attach conditions of approval to certain subdivisions. Because the motion judge found that the extent of the County's jurisdiction in that regard was the same as, and no greater than, its jurisdiction over site plan approvals, a conclusion with which the County disagrees, we must of necessity deal with the issue.
The County asserts that the motion judge erred in finding that it did not have greater authority over subdivisions than over site plans, a finding which was predicated upon a determination that there was no distinction between N.J.S.A. 40:27-6.2 and 40:27-6.6. The County argues that there is a significant difference in language which the motion judge failed to recognize. Specifically, the County claims that the use of the words "affecting county road or drainage facilities" in N.J.S.A. 40:27-6.2 affords a wider jurisdiction over subdivisions than with respect to site plans, which are subject to review if they concern "land development along county roads or affecting county drainage facilities." As the County argues, a "subdivision need only `affect' county roads for a county planning board to have jurisdiction to review and approve that subdivision," while site plan review deals only with property "along county roads." As a result, the County asserts that it has the power to review and, if necessary, impose conditions on subdivisions that do not abut a county road but have a traffic impact upon a county road. We conclude that the trial court erred in its interpretation of the statute and that the County's jurisdiction over *388 subdivisions is different from its jurisdiction over site plans.
As we noted, N.J.S.A. 40:27-6.2 sets out two bases for jurisdiction over subdivisions: first, those that affect county roads "as set forth and limited hereafter in this section"; and, second, those that affect county drainage facilities "as set forth and limited hereafter in this section." The "hereafter" sections set out those "limited" "engineering and planning standards." Of significance to this analysis are subsections (a) and (e) which we have quoted at length earlier. Subsection (a) deals with the need for "adequate drainage facilities and easements" to deal with storm water under certain specified conditions. N.J.S.A. 40:27-6.2a.
However, subsection (c) deals with an entirely separate problem, which may be described generally as traffic safety. The requirements are applicable in two circumstances, where the proposed subdivision "abuts a county road, or where additional rights-of-way and physical improvements are required by the county planning board," N.J.S.A. 40:27-6.2c (emphasis added); in such cases the improvements "shall be subject to the recommendations of the county engineer relating to the safety and convenience of the traveling public." Ibid. The use of the coordinating conjunction "or" in this subsection leads us to conclude that the County's power to regulate subdivisions extends beyond those developments abutting a county road. The second portion of the quoted sentence gives the County power to impose conditions of approval upon subdivisions, wherever located, that are determined to have an impact upon the safety and convenience of the traveling public.
Thus, there is a significant distinction between sections 6.2 and 6.6, but not simply because one uses the phrase "along county roads" and the other "affecting county roads." Rather, the difference flows, as we have explained, from the specific language employed in 6.2c, language which does not appear in the seemingly parallel provisions of 6.6. We cannot explain why the difference exists; it may have been no more than a poor choice of language and a failure to recognize that the two provisions were not the same. However, where the language is clear, as we find it to be, it is not our role to rewrite the statutes to render them fully congruent. See N.J. Shore Builders Ass'n v. Tp. of Marlboro, 248 N.J.Super. 508, 512, 591 A.2d 950 (App.Div.1991).
Further, our construction makes sense. If a very large development results in a massive infusion of vehicles with resulting traffic impacting on safety and convenience on nearby county thoroughfares, it makes perfect sense to permit the County to impose conditions on that subdivision even if the development does not directly abut a county road. We do not share plaintiff's view that the impact of such a construction of the statute "would be drastic." While it is true that any subdivision would "have the potential to increase traffic volume on a county road somewhere in the vicinity," we see nothing to suggest that the County will seize on minor increases in traffic caused by a small subdivision to impose onerous conditions on the developer. Indeed, section 7.07, paragraph 33 of the LDRR permits the County to require a traffic study to be included with a subdivision application only in the case of certain larger developments, as described in an accompanying table. As the County points out:
Only those subdivisions of a size with the potential to provide significant traffic flows are subject to review and approval for traffic impact by the County Planning Board. Those subdivisions are *389 listed at Table 22 (Developments Requiring Traffic study) of the LDRR.
It is precisely because, as plaintiff suggests, "significant subdivisions would probably increase traffic on more than one road," that the County was given this traffic-oriented jurisdiction over subdivisions.
We do not agree with plaintiff that case law compels a different conclusion. Kode Harbor dealt with a county planning board's jurisdiction to review site plans under N.J.S.A. 40:27-6.6. Kode Harbor, supra, 230 N.J.Super. at 432, 553 A.2d 858. Having interpreted "along" to mean "abut, front on or border," the court's reference to the use of the word "abut" in 40:27-6.2c was merely illustrative. Id. at 439, 553 A.2d 858. We have no disagreement with the court's conclusion that "abut" in 6.2c and "along" in 6.6 are not subject to "meaningful distinction." Id. at 441, 553 A.2d 858. Indeed, we have no disagreement with the court's statement that the statute did not evidence a "legislative design to grant broader authority to county planning boards in the context of their review of site plans than they possess in their consideration of subdivisions." Ibid. Our conclusion is just the reverse; the statute as written presently demonstrates a broader authority over subdivisions than with respect to site plans.[8] While the court did not approve of a construction of 6.6 that "would provide [the County Planning Board] with jurisdiction over land developments adjacent to expansive stretches of highway well beyond and away from county roads," ibid., that statement was only in reference to section 6.6. To the extent that it may have applicability to 6.2, as plaintiff urges, we note our disagreement. The Kode Harbor court did not undertake an analysis of 6.2, which, as we have seen, leads us to a contrary conclusion.
Nor is Squires Gate, Inc. v. County of Monmouth, 247 N.J.Super. 1, 588 A.2d 824 (App.Div.1991) supportive of plaintiff's position. That case involved a county planning board's action requiring a developer to contribute its proportionate share of the cost of reconstructing several bridges that had a direct impact on drainage facilities. Id. at 6-8, 588 A.2d 824. The court found that there was a "rational nexus" between the expansion of the bridges and "storm waters, which drain into County culverts." Id. at 9, 588 A.2d 824. The court held that "Kode Harbor should not be applied so broadly as to preclude a county planning board jurisdiction to require any developer contribution for off-site road improvements or drainage facilities where such rational nexus is established." Ibid. But Squires Gate did not involve traffic, only drainage facilities, and it is in that context that the court's abbreviated comparison of 6.2 and 6.6 was made. Id. at 8, 588 A.2d 824.[9]
Our conclusion is that N.J.S.A. 40:27-6.2 gives a county planning board jurisdiction over subdivisions that are found to have impact on public safety and convenience resulting from increased traffic. To *390 the extent that the LDRR, as reflected in the County's practices, implements such jurisdiction, it is valid and the motion judge's conclusion to the contrary is reversed.

III
In its cross-appeal, plaintiff asserts that the motion judge erred in holding that approval expiration time limits in the LDRR are valid. The judge explained that there were problems with the expiration provision, but held that the propriety of the County's action may depend on the facts and circumstances of each case. Thus, plaintiff seeks to reverse paragraph five (that sections 4.17 and 5.12 of the LDRR are valid) and paragraph six (that the County Planning Board may impose reasonable time limits in its approvals and that it may impose additional conditions on site plan or subdivisions after time limits have expired or when applicants revise development plans) of the final judgment. We agree.
As amended on December 8, 1999, section 4.17 now reads:
Preliminary site plan approval granted pursuant to this Resolution shall be valid for a period of three (3) years from the date of written approval. At the Applicant's request and with the consent of the Municipal Approval Authority, two (2) one-year extensions of the approval may be granted by the County Planning Board. The Applicant may apply for an extension either before or after the expiration date of the preliminary site plan approval and/or extension of that approval. Any extension granted shall run from expiration date of the previous approval. If design standards contained in this Land Development Review Resolution have been revised during any approval period, the revised standards may be applied prior to the granting of any extension.
Section 5.12, applicable to subdivisions, provides:
Preliminary plat approval pursuant to this Resolution shall be valid for the same period of time as the municipal approval, but in no case for longer than three (3) years. With the approval of the municipal approval authority the Planning Board may extend the period of approval by two years.
Plaintiff also relies on the "standard" County letter approving a development application, which provides:
The Burlington County Planning Board is taking this opportunity to apprise [sic] the applicant that preliminary county approval expires three (3) years from the date of this approval letter. In the event this subdivision is not consummated in its entirety within the three (3) year period, it is suggested that the applicant, prior to that time, contact Principal Planning Engineer, R. Thomas Jaggard for further advice.
Plaintiff contends that it did not challenge the expiration provision based necessarily on potential harm to a developer in a given case, but rather on the ground that expiration provisions are ultra vires County authority. However, plaintiff does cite the example of one development where the County refused to sign any more final plans unless the developer submitted a new preliminary application because the preliminary approval had run out. Plaintiff correctly notes that Jaggard, the County Engineer, admitted that the County imposes time limits on approvals. Thus, the parties agree that time limits have been imposed.
Plaintiff argues that because the County Planning Act does not address expiration dates on approvals, this court should turn to the MLUL, under which approvals do not expire, but simply lose protection *391 against ordinance changes after the statutory period of protection.
The County asserts that the County Act, under N.J.S.A. 40:27-6.2 and -6.6, provides county boards of chosen freeholders with the authority to adopt a resolution establishing the procedures, as well as engineering and planning standards, for the review and approval of subdivision and site applications by the County Planning Board. The County argues that as one of these procedures, the LDRR places durations on preliminary subdivision approvals in section 5.12, as amended in 1999, and preliminary site plan approvals in section 4.17, as amended in 1999. Thus, the County asserts that placing durations on approvals constitutes a procedure delegated to county governing bodies by the Legislature under N.J.S.A. 40:27-6.2 and -6.6.
First, there are slight differences in the wording of the two provisions. N.J.S.A. 40:27-6.2 provides that the review or approval of subdivisions "shall be in accordance with procedures and engineering and planning standards adopted by resolution," and then it states that "[t]hese standards shall be limited to" and lists those limitations. N.J.S.A. 40:27-6.6 provides that the review of site plans "shall be in conformance with procedures and standards adopted by resolution or ordinance," and then states that "[t]hese procedures and standards shall be limited to" and lists those limitations.
We cannot conclude that these differences are significant or that it is definitive whether the term "procedures" or the term "standards" is used. Where it is proposed that two or more existing statutes relating to similar subject matters are inconsistent, it is incumbent on a court to construe them, to the extent reasonably possible, so as to avoid a conflict. Oches v. Tp. of Middletown Police Dep't, 155 N.J. 1, 5, 713 A.2d 993 (1998).
In addition, when construing a statute, courts must avoid absurd results, N.J. Mfrs. Ins. Co. v. Longo, 303 N.J.Super. 286, 291, 696 A.2d 767 (App.Div.1997), and read it in a common sense manner that advances the legislative purposes. Midlantic Nat'l Bank v. Peerless Ins. Co., 253 N.J.Super. 137, 142, 601 A.2d 243 (App.Div.1992). The rule of strict construction cannot be allowed to defeat the evident legislative design. Caputo v. The Best Foods, Inc., 17 N.J. 259, 264, 111 A.2d 261 (1955).
Although these two provisions have slightly different wordings, neither provision allows explicitly for placing durations on approvals, as a procedural condition or standard. N.J.S.A. 40:27-6.2 states that "standards shall be limited to" and lists five requirements, none of which deal with approval durations, while N.J.S.A. 40:27-6.6 states that "procedures and standards shall be limited to" and also lists five requirements, none of which deal with approval durations.
As a result, we conclude that the placement of durations on approvals is a condition that must be listed in these two provisions for it to be delegated by the Legislature. Absent such delegation, there is no basis for the County to place such a restriction in the LDRR.
Plaintiff asserts that this court should apply the Municipal Land Use Law ("MLUL"), N.J.S.A. 40:55D-1 to -99, by analogy, and the MLUL does specify three years for preliminary approvals under N.J.S.A. 40:55D-49 and two years for final approvals under N.J.S.A. 40:55D-52. However, plaintiff also notes that these time limitations in the MLUL are only vesting provisions, after which the development loses it protection against zoning ordinance changes. Relying correctly on Palatine I v. Planning Board of Montville, *392 133 N.J. 546, 553-54, 628 A.2d 321 (1993), as well as William M. Cox, New Jersey Zoning & Land Use Administration, §§ 15-5.1 to -5.2 (2002) and Frizell, supra, § 14.51, at 317-18, plaintiff asserts that nothing in the MLUL allows for a municipal approval to "expire."
We agree that an analogy can be drawn appropriately. Because the MLUL does not allow municipal approvals to expire, this provides additional support for our conclusion that absent explicit authority, the County Planning Act does not give county planning boards the right to place expirations in its approvals. Thus, sections 4.17 and 5.12 of the LDRR are invalid.

IV
On its cross-appeal, plaintiff also contends that the motion judge erred in holding that the County can impose new and additional conditions on development after granting preliminary approval. Plaintiff claims that imposing additional conditions is not authorized under the County Planning Act. We agree.
This issue does not concern a specific provision of the LDRR but a County practice. However, here again, because the County does not contest plaintiff's right to challenge a practice under the Declaratory Judgment Act, and because the motion judge ruled on the issue, we will also proceed to the merits.
The trial court stated that the County Planning Engineer had certified that new conditions are imposed "only when the plans for development or surrounding circumstances have changed." Before the judge, plaintiff concurred that it is appropriate in the event of a change in the development project itself for the developer to seek an amended preliminary approval, but it objected to the County's right to impose new conditions where off-site conditions have changed. But because the whole purpose of County planning is to control conditions that affect county roads, the motion judge found himself unable to conclude on the record before him that it was unreasonable to "recall" a previously approved but undeveloped project where unforseen circumstances so altered the neighborhood of the project that reasonable additions or modifications to previously approved plans would ameliorate those problems. However, he urged that the County amend the LDRR to provide expressly for the recall of approved projects and to fix appropriate and reasonable criteria for so doing. The court did not cite to any provision or language from the County Planning Act allowing imposition of additional conditions on development after the grant of preliminary approval.
Plaintiff contends that the courts have applied the principles governing the MLUL, when the County Planning Act is silent. Plaintiff argues, although without citation to the MLUL or any cases, that both the express terms of the MLUL and judicial opinions establish that a developer has vested rights from the date of preliminary approval and a planning board cannot impose additional conditions even after the period of vested rights expires unless there has been an amendment to the governing ordinance.
We conclude that the provisions of the MLUL, although not in terms applicable to County action, must and should be considered in reviewing the validity of the County's practice at issue. The same policy considerations that govern the MLUL are applicable to interpretation of the powers conferred, by the County Planning Enabling Act. See Squires Gate, supra, 247 N.J.Super. at 8, 588 A.2d 824; Harris v. Salem County Planning Bd., 123 N.J.Super. 304, 307, 302 A.2d 552 (App.Div.) *393 certif. denied, 64 N.J. 152, 313 A.2d 212 (1973);[10]181 Inc. v. Salem County Planning Bd., 133 N.J.Super. 350, 354, 336 A.2d 501 (Law Div.1975), aff'd in part, rev'd in part, 140 N.J.Super. 247, 356 A.2d 34 (App.Div.1976). We find nothing in the MLUL which permits a municipality to add conditions after preliminary approval has been granted where those conditions relate to changes in the surrounding area resulting from the actions of others, as opposed to subsequent changes in the plans for the development which received the preliminary approval. The preliminary approval gives the developer certain vested rights for a given period of time, as discussed in Point III. It would be manifestly unfair for the municipality to impose additional conditions during the period in which the developer's rights are protected. Indeed, one could readily imagine circumstances where the additional conditions are so oppressive as to effectively nullify the preliminary approval and prevent the developer from going forward, perhaps after considerable effort and resources have been expended.
There is no doubt that other developments may seek and obtain approval during the period in which the earlier granted preliminary approval for another development is still in effect. However, the developer with the preliminary approval in hand should not suffer; rather, it is the subsequent development that must bear the brunt of conditions necessitated by the earlier approval during that period of protection. We see no reason why the same approach should not govern County Planning Board action.
Further, to permit the County to add conditions when the municipality could not do so would undermine the MLUL and possibly serve to render useless preliminary approval granted by the municipality. The two statutes should work together, not at odds with each other. Just as the municipalities can only exercise power granted by the MLUL, Bernards Tp., supra, 108 N.J. at 234, 528 A.2d 555; so the County may only employ methods that are sanctioned by the County Act. Manalapan Builders Alliance, Inc. v. Tp. Comm. of Manalapan, 256 N.J.Super. 295, 304, 606 A.2d 1132 (App.Div.1992); Kode Harbor, supra, 230 N.J.Super. at 440, 553 A.2d 858; see also Cox, supra, § 4-3.1, at 71-72 (2002) (land use regulatory agencies (including the County Planning Board) are creatures of statute and can only exercise authority to the extent granted by that statute).
Because the County Planning Act does not include any provisions allowing for the imposing of new conditions after preliminary approval has been granted, we conclude, contrary to the decision of the motion judge, that those sections of the LDRR, as well as the County's practices which permit the imposition of such additional conditions, are invalid.

V.
In conclusion, we determine that (1) sections 4.17 and 5.12 of the LDRR, giving the County the right to place expiration dates on subdivision approvals are invalid; (2) that the County's practice of imposing new or additional conditions on developments after preliminary approval is invalid; (3) that section 2.01B of the LDRR as presently drafted is invalid; and (4) that the County has jurisdiction to review and impose conditions on subdivisions that are neither along or abutting a county road *394 nor affect county drainage facilities if the subdivision has an adverse traffic impact as specified in N.J.S.A. 40:27-6.2c.
Reversed.
NOTES
[1] Plaintiff is a trade association for the residential and non-residential construction industry in Burlington County and four other counties in southern New Jersey. Its membership includes approximately 105 builder members and 369 associate members, which covers subcontractors, suppliers, financial institutions, title companies, and professionals who provide goods and services to builders.
[2] The complaint also mentioned section 5.14 of the LDRR as one of the challenged provisions. We are unable to discern how that provision impacts on any of the County's practices at issue. Further, the motion judge did not mention 5.14 in his decision and it is not discussed in any of the briefs filed with us. As a result, we do not address it.
[3] In support of its motion, plaintiff submitted certifications from many of its members designed to show the County's practices with respect to the matters challenged. In response, the County submitted a certification of its Planning Engineer refuting plaintiff's claims and providing explanations for certain actions.
[4] The judge also determined that the County Planning Board's practice of requiring developers to obtain off-site land or easements as a condition of development approval is contrary to the County Planning Act, ultra vires, and invalid. The County has not appealed that portion of the trial court's ruling.
[5] Section 2.02 reads as follows:

Exempt site plans. The following site plans for land developments are exempt from Planning Board review:
i. development of an individual single family residence;
ii. land developments of any use not along a county road which include less than one acre of impervious surfaces and will not cause storm water to drain directly or indirectly to a county road or through any drainageway, culvert, pipe or facility that the County constructed or is responsible to maintain.
[6] Chapter IV of the LDRR deals with procedures concerning site plan applications that have been determined to be subject to County review under 2.01B. Concerning approval conditions, section 4.06 provides that "County engineering staff shall review applications which include all information required by this Resolution, and shall make a recommendation to the Land Development Review Committee concerning the application, including recommending what conditions, if any, should be attached to approval of the application."
[7] Chapter V of the LDRR sets out procedures dealing with subdivisions that have been found subject to County review (which includes all subdivisions). Parallel with section 4.06 dealing with site plans, section 5.06 provides that "The Planning Engineer shall review applications which comply with the terms of this Resolution and shall make recommendations to the Land Development Review Committee concerning the application, including the need for conditions to be attached to the approval."
[8] We can readily conceive of developments requiring site plan, but not subdivision, review that might have substantial traffic impact on non-abutting county roads. We are not faced with such a situation here and express no opinion whether site plan jurisdiction over such non-abutting roads might be implied, even though clearly not expressed in the statute. See Divan Builders, Inc. v. Planning Bd. of Wayne, 66 N.J. 582, 595-96, 334 A.2d 30 (1975).
[9] Plaintiff has also cited Frizell, supra, at § 14.79 for the proposition that a subdivision application requires review and approval by a county planning board "only if the proposed subdivision abuts a county road or affects a county drainage facility." For the reasons expressed above, we do not agree with Mr. Frizell in this regard.
[10] Harris dealt with the Municipal Planning Act of 1953, which was the predecessor of the MLUL that repealed it. Davis v. Planning Bd. of Somers Point, 327 N.J.Super. 535, 540 & n. 2, 744 A.2d 222 (App.Div.2000).